*Hartford,*
November,
1815.

M'Lean
*v.*
M'Lean.

---

THE STATE OF CONNECTICUT *against* MINER BABCOCK.

AFTER a verdict of *guilty* on an indictment for murder, the prisoner moved in arrest of judgment on the following grounds. 1. That one of the jurors was not, at the time of empannelling the jury, nor at the time of giving their verdict, a freeholder; which fact was unknown to the prisoner, or his counsel, at the time of the trial.

2. That the jury were not, after the cause was committed to them, confined under the custody of an officer appointed by the court until they had agreed on a verdict, but were immediately permitted to separate, and go to their respective places of abode, and did not meet again until the next morning, when they agreed on and brought in a verdict that the prisoner was guilty.

The questions arising on this motion were reserved for the consideration and advice of the nine Judges.

The case was now submitted without argument.

SWIFT, Ch. J. The statute of the state(*a*) makes it an indispensable requisite that jurors should be freeholders, and by the common law such deficiency in the qualification of a juror discovered after verdict, is a sufficient ground of arrest. Though this defect does not affect the capacity or moral qualification of a juror, and is strictly technical; yet the law is too positive to be dispensed with; and in a criminal case of a capital nature, it cannot be presumed, that the party intended to waive any advantage or privilege given him by law.

As to the objection that the jury, after the cause was committed to them, were permitted to separate before they agreed

It is an indispensable qualification of jurors that they should be freeholders, and if it be discovered after verdict that one of the jury was not a freeholder, it is a sufficient ground of arrest of judgment. But judgment will not be arrested merely because the jury, after the cause was committed to them, separated before they had agreed on a verdict.

(*a*) *Tit.* 96. *c.* 1. *s.* 1. 3. 8.

*Hartford,*
*November,*
*1815.*

State
*v.*
Babcock.

on a verdict, it may be said, that such has been the immemorial usage in this state; and the practice has been sanctioned by a decision of this Court.(*a*)

(*a*) BRANDIN *against* GRANNIS & WIFE, in error, *November* term, 1811.

IN an action for slander against *Brandin,* the defendant pleaded *not guilty,* and the jury found a verdict against him with large damages. The defendant then moved in arrest of judgment, on the ground that the jury, immediately after the cause was committed to them, dispersed into different parts of the city of *New-Haven,* (the place of trial,) and did not remain under the care or charge of the officer whose duty it was to attend them, and remained in that situation until about an hour before the opening of the court the next morning, when they met by appointment at the jury room, considered the cause, and agreed on their verdict. The court adjudged the motion insufficient, and rendered judgment for the plaintiffs. The defendant then brought a writ of error in the Supreme Court of Errors.

*N. Smith* and *Staples,* for the plaintiff in error, relied upon the explicit provisions of the statute; (*tit.* 6. *c.* 1. *s.* 11.) the exposition given it by the superior court soon after it was passed, (*Nicolls* v. *Whiting,* 3 *Day's Ca.* 287. n.) and recently by the circuit court of the *United States* in this district; (*Lester* v. *Stanley,* 3 *Day's Ca.* 287. *Howard* v. *Cobb,* 3 *Day's Ca.* 310. and other cases not reported), and forcibly urged the danger of departing from the letter of the statute and the ancient practice.

*Daggett,* for the defendants in error, relied principally upon the construction given to the statute by long and established practice, and the inconvenience that would result from a literal compliance with its provisions.

BALDWIN, J. The question presented by this record is, whether consistently with the act entitled " An act for the directing and regulating civil actions," a jury may separate after a cause has been committed to them, and before they have agreed on a verdict. The only clause applicable is in these words: " When the court have committed any cause to the consideration of the jury, the jury shall be confined under the custody of an officer, appointed by the court, until they are agreed on a verdict."

Whatever might have been my opinion of the effect of this statute, had I been called to decide upon it, without the aid of a practical construction, I do not feel myself now at liberty to oppose an uniform practice under it for a century, unless the construction shall appear unreasonable, and the practice in pursuance of it, be followed with greater mischief, than would flow from a literal compliance with what is claimed to be the letter of the statute. I have never known in our courts a jury confined in the manner claimed. Reliance has always been placed on the guard set upon our jurors by the peculiar form of their oath. It is evident from that, that our ancestors, (for it was adopted in the year 1640, soon after the settlement of the country,) did not mean to introduce the system of starving a jury into agreement, but that their verdict might be the result of cool deliberation. The oath, therefore, implying that they may separate, binds them " to keep secret their own and their fellow's counsel, and to speak nothing to any one, nor suffer any to speak to them, of the business in hand, but among themselves, and when agreed upon a verdict, that

I am of opinion that the motion in arrest is sufficient for the reason that one of the jurors was not a freeholder.

In this opinion the other Judges severally concurred. Judgment to be arrested, and a new trial had.

they will keep it secret, till they deliver it up in court." These guards and provisions are here still in force, and are not contained in the oath administered to jurors in *England,* or in any of those states where jurors are strictly confined.

The subsequent statute now in question, though it is said to have been literally enforced, in some instances, soon after it was enacted, has since received a construction, sanctioned by long usage, till lately universally acquiesced in, and repeatedly recognized of late by the superior court. This construction is, that the jury should be attended to and from court by an officer; should deliberate by themselves, under his protection; and that he should guard them from intrusion; but it does not require that they should be otherwise restrained, nor that they should be prevented from adjourning and separating when occasion requires.

No evils that I perceive, result from the practice in pursuance of this construction, which would not follow the separation of jurors after they had agreed on, and before they had delivered up their verdict. This the statute permits. I presume also, that with us where courts are in the habit of returning juries to a second consideration, if the jury should agree upon a verdict, and then separate, and after reflection, should, on the next day, agree upon a different verdict, they might lawfully do so. If they may, the agreement is of no avail; and under a different practice, would soon be a mere pretence for separation. Nothing then short of a rigorous confinement, according to the rule of the common law, till the verdict is delivered up, would attain the object sought.

Many inconveniences would follow a literal execution of the statute as claimed. It would hazard many late judgments now considered at rest. It would make a very unpleasant innovation upon the habits of our jurors; and I am confident that justice would not be promoted, truth more clearly discovered, or parties be better satisfied, by hurrying on the jury to a hasty decision, and denying them respite or repose till they should agree. Causes are often committed to the jury, at a late hour of the day, which require much reflection, investigation, and sometimes calculation. They will generally be ill prepared for this immediately after the fatigues of a tedious trial, and may be unable to come to a result in seasonable hours; yet such are the cases to which the rule will most frequently apply. In ordinary cases, the jury have no occasion to separate, and seldom do.

This construction of the statute does not appear to me unreasonable. It is certainly conformable to the temper of the times, and the habits of our citizens. And I am not convinced, that we are now bound to abandon it, after it has been sanctioned by so long and quiet usage; nor that the advantages would over-balance the inconveniences resulting from a change.

I would therefore establish the construction, by affirming the judgment of the superior court.

In this opinion the other Judges severally concurred, except SMITH, J. who dissented.

Judgment affirmed.