Reins v. People.

---

MICHAEL REINS, Plaintiff in Error, *v.* THE PEOPLE, Defendants in Error.

ERROR TO COOK.

It is not error for the court, by consent of the parties, to direct the jury that if they should agree upon their verdict before the assembling of the court on the following day, they might sign and seal the same, and separate if they chose, and return with their verdict sealed into the court upon the assembling thereof on the following day.

This rule is entirely independent of the 189th section of the criminal code.

In capital cases, even the separation of the jury, without consent, is not of itself error. It must be shown, besides, that the accused might have been prejudiced, that the jury might have been tampered with, or improperly influenced in some manner, in consequence of the separation, so as to affect their verdict.

Affidavits cannot be read to impeach the verdict of a jury.

When a sheriff makes improper remarks to a juryman, he may be fined for his conduct, but it does not vitiate the verdict.

An instruction which tends to mislead the jury as to the evidence, is improper.

An instruction which tells the jury, that in order to justify the killing, in an indictment for manslaughter, "the threatened danger must be so great as to

create a reasonable belief, in the mind of the accused, of imminent peril to life, or the most serious bodily harm," is erroneous. The words, "great bodily harm," as used in the statute, fall far short of, "the most serious bodily harm."

It is the right of the accused, under a well founded doubt of his guilt, to have a verdict of acquittal. The jury have no discretion about it.

PLAINTIFF in error, Michael Reins, was indicted by the grand jury of the Cook Circuit Court, for the crime of manslaughter, and plead "Not guilty."

At the January term the cause was tried before Judge MANIERRE, and a jury. The jury found Reins guilty, and fixed the term of his imprisonment at three years.

Reins moved for a new trial, which the court overruled, and also overruled Reins' motion in arrest of judgment, and sentenced him.

On the trial, the following evidence on behalf of the People was given:

*H. S. Hall* testified as follows; Reside at Lemont, Cook county; know John Kaine, deceased, also defendant Reins; am a physician and surgeon. On the 24th August last, about six o'clock in the evening was called to see Kaine,—he had been stabbed; found him lying on his face, in rear of Mrs. Foley's shanty; he died ten minutes afterwards. With Dr. King, made *post mortem* examination; found one wound over region of the heart, half an inch long, made by a knife or sharp instrument, which in entering had struck the sixth rib and glanced upwards, severing fifth rib, and entered the left ventricle of the heart three-fourths of an inch. There was another wound, at the right of the navel, which penetrated the abdomen, and one of the intestines protruded six inches; there was another wound in the stomach which penetrated the abdomen; there was another slight wound on the arm. The wounds in the abdomen would not cause death so soon; the one in the heart would. [A knife was here shown to witness, and he was asked by the State's attorney, whether in his opinion the wounds in deceased's body might have been inflicted by that knife? To which defendant's counsel objected, upon the ground that it had not been proven that defendant

ever had possession of the knife or any connection with it, and that it was improper and irrelevant. The court overruled the objection, and the defendant then and there excepted. The witness then answered, "such an instrument as this might have produced the wounds."]

Cross-examined. The deceased was a passionate man, and quarrelsome when intoxicated; had a great many fights; was a muscular man, not large, but compactly made. The defendant is a peaceable, quiet man, not as strong and muscular, though larger, and some fifteen years older than deceased, who was about twenty-five years old.

*Barney McCanna* testified: Reside at Lemont; know defendant Reins, and know deceased. On 24th of August last, Reins, Kane and I, went to Mrs. Foley's shanty, in Lemont, and got some whisky. Reins, after we drank, went out and into Mrs. Quinn's house; Kaine and I followed him; after a while we all went back to Mrs. Foley's,—all good natured. Kaine called for a pint of whisky; we drank it between us, and sat down and talked. Kaine and Reins commenced to argue about one Delany; Kaine said, "I believe you and Delany have an old grudge against me." Reins said, "No, I don't believe we have." Kaine said he could beat either him or Delany; Reins said, "I guess not." Then Kaine up with his fist and struck Reins, who struck back. I then left, and did not see either of them until after Kaine was dead.

*Anna Frances Foley* testified: Reside at Lemont. One Saturday, last August, at about five o'clock P. M., Reins, Kaine and McCanna came to my house, and asked for a pint of whisky; they drank it. I did not see what happened, but Kaine and Reins struck each other,—I don't know which struck first. Kaine was on top and Reins under. I tried to separate them, and succeeded; Kaine went out, and I shut and locked the door; Reins pushed me away and opened the door and looked after Kaine and said, he could not have beat me but he struck me foul, or false. Then Kaine came back and pressed open the door; I tried to hold it; Reins shoved me away; Kaine pushed on the outside, and burst the door open, and as soon as he got in he commenced to

box Reins, and Reins struck him back, but Kaine got him down and was striking him, when a gentleman (Mr. Morrison) came in and separated them. I did not see that Kaine was hurt at all. There was a little blood on the floor.

*William Morrison* testified: Was at Lemont on railroad track; heard some boys say there was a fight; went up in sight of Mrs. Foley's; as I reached the opposite side of the street, Kaine came out of Mrs. Foley's, and came up within six feet of me; just then Reins came to the door of Foley's shanty, which was open, and said something—did not understand what; his face and clothes were covered with blood, which he was wiping off; his nose was bleeding profusely, and he had a large bruise over his eye. Just as Reins appeared at the door, Kaine turned around and looked towards the house,— can't say whether he turned around before Reins appeared at the door or afterwards, but think it was about the same time. As soon as Kaine saw Reins, he started for him as fast as he could walk, and when Reins saw him coming, he stepped back into the shanty, and the door was closed; as Kaine neared the door, he moved faster and went against it with his whole force to burst it open; he started it open a little, and kept pushing and crowding and prying until he got his foot, knee and shoulder into it a little, and struggled with all his power to force it open, and crowd himself in; he finally crowded his left shoulder and side in through the door, and was pushing with his hands and knees, with his back against the casing to force the door open;—when he got part way into the door, I saw a hand come out and strike at him,—it struck up under about to Kaine's breast, three or four times; he did not flinch, or seem disturbed by the blows, but kept on pushing and working until he got in, and as he went in, the door closed with a slam—it seemed as though some one was pushing against it from within. I then went up and opened the door. Reins was in the middle of the floor on his hands and knees, his face on the floor, and his hands sprawled out beyond his head; Kaine was on top of him, striking him in the ribs; Mrs. Foley was there. I took Kaine off, and told him to let Reins alone; he had beat him enough; he went out, and I followed

him; he went around the back side of the house and fell; I saw he had been stabbed, and went for Dr. Hall. Saw Reins when I came back; he was covered with blood; I did not see any knife; when I first came in sight of the shanty, Kaine was just outside of the door, and Mrs. Foley was trying to get him to go away; he said he would go for her, but for no one else, and started away. When Kaine turned to go back, Mrs. Foley went into the house and Reins stepped back out of the door and it was closed; it did not exceed a minute from the time Kaine got into the house before I went in; had to go twenty-five or thirty feet.

The People here rested their case.

The testimony for the defense was as follows:

*Mrs. Wm. Quinn* testified: Reside in Lemont; on the 24th of August last, Reins came into my house; Kaine and McKanna followed him soon after, and wanted him to go back to Mrs. Foley's and get some more drink; Reins did not want to go, said he had enough, but they kept coaxing him until he went.

*Dean Monahan* testified: Reside at Lemont; I have known Kaine a long time, and Reins also; I was overseer of the Illinois Stone Co.'s works, and both men worked for me; Kaine had the reputation of being a fighting character; I turned him off once for fighting; Reins was a very peaceable and quiet man; Kaine was a very quick, powerful man, much stronger than Reins.

Cross-examined. I never knew Kaine to fight unfairly, nor use any weapons; he and Reins were always friends.

The court instructed the jury for the People as follows:

1. If the jury believe, from the evidence, that the defendant did not renew the fight, but in good faith sought to decline any further struggle—yet, if they further believe, from the evidence, that the defendant had no reason to believe that Kaine intended to take his life, or to inflict on him great bodily harm, or to have any thing more than a fair fight, and that he struck the blow in revenge, or in a reckless spirit, then the defendant is not entitled to claim exemption from punishment on the ground that the killing was in self-defense. It must appear that the

defendant not only really and in good faith endeavored to decline any further struggle, or to escape from his assailant before the blow was given, but it must also appear that the circumstances were sufficient to excite the fears of a reasonable person, and that the defendant really acted under the influence of those fears, and not in a spirit of revenge, to entitle the defendant to an acquittal on the ground of a justifiable homicide.

2. The jury, in determining whether the defendant actually feared the loss of life or great bodily harm to himself, or acted in a spirit of revenge, should take into their consideration the evidence, if any, tending to prove the knowledge and acquaintance of the defendant and deceased with each other, or of a previous difficulty between them, and whether or not the deceased had any weapon; also the manner in which the knife was used by the defendant, if the jury believe, from the evidence, that a knife or some similar weapon was used.

3. If the jury find the defendant guilty in manner and form as charged in the indictment, then it is their duty to fix the term of his imprisonment in the penitentiary not less than one year, and may be extended to the natural life of the prisoner.

4. If the jury believe, from the evidence, that the deceased, John Kaine, and the defendant, Michael Reins, had words and blows with and against each other shortly before the alleged killing, and that after having such words and blows they were separated, and that Kaine thereupon left the shanty of Foley; and if the jury further believe, from the evidence, that the defendant, after Kaine went out, followed him to the door with a view to renew the fight, and that Kaine thereupon turned back to attack and beat the defendant, and that the defendant, while Kaine was entering the door, stabbed and killed him, then the defendant is guilty of manslaughter, and the jury should so find, unless the jury further believe, from the evidence, that said stab was given by the defendant while actually fearing loss of life or great bodily harm to himself from the assault of Kaine, and not in a spirit of revenge. The bare fear of injury to the body is not a sufficient justification in any case for killing. The

threatened danger to the person must be so great as to create a reasonable belief, in the mind of the person assaulted, of imminent peril to life, or the most serious bodily harm.

To all of which instructions, and each and every of them, and the giving of them by the court, the defendant, by his counsel, then and there excepted.

And the said defendant, by his counsel, moved the court to instruct the jury as follows :

1. If the jury believe, from the evidence, that the defendant Reins, in defense of himself, inflicted upon the deceased the wounds or stabs which caused his death, while the deceased was manifestly intending and endeavoring in a violent manner, to enter the habitation of the witness, Mrs. Foley, for the purpose of assaulting or offering personal violence to the defendant Reins, being therein, the killing was justifiable, and the jury must acquit the defendant.

2. If the jury believe, from the evidence, that the defendant inflicted the wounds upon the deceased, which caused his death, and that he inflicted said wounds in self-defense, believing that his life was in danger, or that he was in danger of receiving great bodily harm from the deceased, and that such danger was so urgent and pressing, that to save his own life, or to prevent such harm, it was absolutely necessary for him to inflict the said wounds, and that the circumstances were sufficient to excite the fears of a reasonable person, they must acquit the defendant.

3. If the jury believe, from the evidence, that the deceased first assaulted the defendant, without any reasonable or justifiable cause, and that at the door of Mrs. Foley's shanty the defendant tried and endeavored to escape from deceased, and prevent his entering therein, and that defendant was in fear of his life, or great bodily harm from deceased, and that from his previous severe beating, and all the surrounding circumstances, he had reasonable grounds for such fears, they may acquit the defendant.

4. If the jury believe, from the evidence, that any other person might have inflicted the wounds which caused the death of deceased during the last struggle at Mrs. Foley's,

they are bound to give the defendant the benefit of any doubt raised thereby.

5. If the jury believe, from the evidence, that the defendant was pursued or assaulted by the deceased in such a way as to induce in said defendant a reasonable and well-grounded belief that he was in danger of losing his life, or suffering great bodily harm from said deceased, and that acting under such reasonable apprehension and for the purpose of protecting himself, he inflicted the wounds upon the said deceased which resulted in his death, then the jury must acquit the defendant.

6. The jury are instructed, that unless they believe, from the evidence, that the wounds inflicted upon the deceased were made with a knife in the hands of the defendant, the defendant must be acquitted.

7. The defendant is entitled to all reasonable doubts that may exist as to the guilt of the defendant.

8. The jury are the judges of the law and the fact.

The first of the foregoing instructions asked by the defendant by his counsel, was by the court refused to be given.

The fourth, seventh, and eighth were given by the court as requested.

The second was modified by the court, by adding thereto the following, viz.: "Unless they also find that the defendant sought to renew the fight, and did not really and in good faith endeavor to decline any further struggle before the mortal blow was given," and was given thus modified.

The third was modified by the court, by interlining and erasing, so that when given it was in the words following, viz.: "If the jury believe, from the evidence, that deceased first assaulted the defendant without any reasonable or justifiable cause, and that at the door of Mrs. Foley's shanty the defendant tried and endeavored, in good faith, to escape from deceased, and prevent his entry therein, and did not seek to renew the fight, and that defendant was in fear of his life, or of great bodily harm from deceased, and that from [erasing the words 'his previous severe beating,'] all the surrounding circumstances, he had reasonable grounds for such fears, they may acquit the defendant."

The fifth was modified by the court by interlining and erasing, so that when given it was in the words following, viz.: "If the jury believe, from the evidence, that the defendant did not seek to renew the fight, but, in good faith, sought to decline it, and that he was pursued and assaulted by the deceased in such a way as to induce in said defendant a reasonable and well grounded belief that he was actually in danger of losing his life, or suffering great bodily harm from said deceased, and that, acting under such reasonable apprehension, and for the purpose of protecting himself, he inflicted wounds upon the said deceased which resulted in his death, then the jury must acquit the defendant."

The sixth was modified by the court, by inserting after the word "knife," and before the word "in," the words " or some weapon capable of producing them," and thus modified, was given by the court.

To all which said several decisions of the court, and each and every of them, in refusing to give the first, and in modifying the second, third, fifth and sixth of the aforesaid instructions asked for by said defendant, as above mentioned, the said defendant, by his counsel, then and there excepted.

And as the jury were about to retire to consider of their verdict, it was suggested by the said prosecuting attorney, that, as it was late in the day, the jury had better be allowed to seal their verdict, if they should agree before the court assembled on the following day, and disperse, and return their sealed verdict into court on the following day; to which proposition of the said prosecuting attorney, the said defendant, by his counsel, then and there assented, waiving all exceptions to such separation, on the ground of irregularity, if the practice should be deemed irregular; and thereupon the court directed and instructed the jury that if they should agree upon their verdict before the assembling of the court upon the following day, they might sign and seal the same, and separate if they chose, and return with their verdict sealed, into court, upon the assembling thereof upon the following day; and thereupon the jury retired to consider of their verdict.

And afterwards, to wit, on the 25th day of January, A. D. 1862, the day following the day on which said cause was given to the jury, they returned into court, having agreed upon their verdict, and (having separated before the assembling of the court on that day,) rendered their verdict sealed to the court, wherein and whereby they found the said defendant guilty in manner and form as charged in said indictment, and fixed his term of imprisonment in the penitentiary at three years, which said verdict was, in the presence of the jury, of the defendant, and his counsel, without any objection, then and there taken, opened, and read and recorded by the clerk.

And thereupon, on a subsequent day of the term, before any judgment was entered on said verdict, the said defendant, by his counsel, moved the court to set aside the verdict of the jury, and for a new trial in said cause, upon the grounds and for the reasons following, viz. :

1. The court erred in giving the instructions for the People asked for by the said State's attorney, and each and every of them.

2. The court erred in refusing to give the first instruction asked for by the defendant.

3. The court erred in modifying the second, third, fifth and sixth instructions asked for by the defendant.

4. The court erred in allowing the jury to seal their verdict and separate, before the same was returned into court.

5. The verdict was contrary to law and against the evidence, and should have been for the defendant.

And afterwards, to wit, on the 30th day of January, A. D. 1862, the said defendant, by his counsel, filed in said court, the affidavit of one Addison Weeks, one of the jurymen who tried said cause, and further moved the court to set aside the verdict of the jury, and for a new trial in 'said cause, upon the facts and circumstances stated and set forth in said affidavit; which affidavit is in the words and figures following, to wit:

18

Reins v. People.

"STATE OF ILLINOIS, } ss.
    COOK COUNTY.

CIRCUIT COURT OF COOK COUNTY,
*Of the January Term, A. D. 1862.*

"THE PEOPLE OF THE STATE OF ILLINOIS, }
        *vs.*
    MICHAEL REINS.

"Addison Weeks, being duly sworn, says he was one of the jurors by whom the above cause was tried, at the present term of this court. That after the said jury had retired to consider their verdict therein, and before the jury separated, one of the said jurors stated to this affiant, that the officer in charge of the jury had just stated to him a remark made by the prisoner in the course of the trial of said cause, to the effect that he (said prisoner), if he got out of this trouble, would "fix" the widow of the deceased, Kaine, who was a witness on said trial; and the said juror further stated to this affiant, that he objected to a verdict for three years on account of said statement of said officer.

"This affiant further says, that he then spoke to the officer, cautioning him against making any further statements to the jurors, and he replied that he had made the remark without thinking, and that he would speak to the juror again, and tell him not to say anything about the matter to the others.

"The sheriff repeated to this affiant the remark of the prisoner above stated.

ADDISON WEEKS."

"Subscribed and sworn to before me, this }
  30th day of January, A. D. 1862.
        WM. L. CHURCH, *Clerk.*"

And afterwards, to wit, on the 1st day of February, A. D. 1862, the court, the State's attorney objecting to the introduction of said affidavit, refused to hear the same read, or to consider the same, and rejected said affidavit of said Weeks, and overruled the motion of said defendant for a new trial, and refused to set aside the verdict of the jury.

To which said several decisions of the said court, the said defendant, by his counsel, then and there excepted.

And thereupon, the said defendant, by his counsel, moved that judgment in said cause be arrested, upon the grounds, and for the reasons, among others, that the jury had been allowed to seal their verdict, and separate before the same was returned into court; which motion the court then and there overruled, and refused to arrest the judgment in said cause.

To which decisions and rulings of the court, the defendant, by his counsel, then and there excepted.

The plaintiff assigns for error the following:

The court permitted improper evidence to be given to the jury on behalf of the People.

The court erred in giving the instructions for and in behalf of the People.

The court erred in refusing to give the first instruction asked for by the defendant.

The court erred in modifying the second, third, fifth, and sixth instructions asked for by the defendant.

The court erred in refusing to hear read and to consider the affidavit of Weeks as to improper conduct of the officer in charge of the jury.

The court erred in overruling the defendant's motion for a new trial.

The court erred in overruling defendant's motion in arrest of judgment.

The verdict is against the evidence, and the judgment is contrary to law, and should have been for the defendant.

The court erred in instructing and permitting the jury to seal their verdict, and separate before the same was rendered.

WALKER & HAMILTON, for Plaintiff in Error.

I.  The court below, in this case, instructed the jury " by consent of parties " to seal their verdict and separate, and meet the court the following day, when their verdict should be opened and entered of record.

This was done, and we think it error.

The 189th section of the criminal code, after providing that

an officer shall be sworn to attend the jury, etc., proceeds in these words, viz. :

"*Provided, however*, That in any cases of misdemeanor only, if the prosecutor for the People, and the person on trial, by himself or counsel, shall agree, which agreement shall be entered upon the minutes of the court, to dispense with the attendance of an officer upon the jury, or that the jury, when they have agreed upon their verdict, may write and seal the same, and after delivering the same to the clerk, may separate, it shall be lawful for the court to carry into effect any such agreement, and receive any such verdict so delivered to the clerk, as the lawful verdict of any such jury." Now, "It is a rule in the construction of statutes, that the expression of one thing is the exclusion of another." See *Sammis* v. *Clark et al.*, 13 Ill. 546.

The permission given by the express terms of the statute to the practice in " cases of misdemeanor only," by necessary implication prohibits it in all cases not included under the head of misdemeanors. But, it is said that the prisoner's assent to the proposition, when made by the State's attorney, waived his right to object to it afterwards. How could he withhold his assent ? He was in court against his will, standing on all his rights,—in presence of the jury, who might acquit, or send him to the penitentiary for life,—it was late in the afternoon, and the court was about to adjourn for the day, and the jury must be kept together all night, unless he assented to the proposition,—his assent to it might impress the jury favorably for him, and the withholding of it might insure his conviction. He was forced to assent, and for that reason, if for none other, it was void.

The reasoning of the court in *State* v. *Populus*, 12 La Annual R. 710, is applicable in all its force to this case. See also *Cancemi* v. *The People*, 18 N. Y. (4th of Smith) R. 128, 137.

But we think the statute conclusive on this point.

II. We think the court erred in refusing to hear read the affidavit of the juryman Weeks. It will be admitted that the facts stated in the affidavit are sufficient to entitle Reins to a

new trial, and the only question to be discussed is, Can the affidavit of a juror to other facts than the misconduct of the jury, be admitted to impeach his verdict in a criminal case?

We are not aware that this precise point has been decided by this court. In case of *Sawyer* v. *Stevenson*, Breese, 6—a civil case—this court decided that the affidavit of a juror as to the misconduct of the jury, might be received to impeach the verdict; and that case has not been overruled.

The facts stated in Weeks' affidavit could not have been proved by any one else except the jurors and the officer; of course, the officer would not voluntarily swear to them, and he could not be compelled to, because he would thereby criminate himself.   See sec. 190, Crim. Code.

III.   Section 32, of our criminal code, defines justifiable homicide to be "the killing of a human being in necessary self-defense, or in the defense of habitation, property or person, against one who manifestly intends, or endeavors by violence or surprise, to commit a known felony, such as murder, rape, robbery, burglary, and the like, upon either person or property, or against any person or persons who manifestly intend and endeavor in a violent, riotous or tumultuous manner, to enter the habitation of another, for the purpose of assaulting or offering personal violence to any person dwelling or being therein."

If this section of the statute is law, then the first instruction asked for by Reins should have been given by the court below, and its refusal to give it, is error sufficient to reverse the judgment in this case.

IV.   The second instruction given for the People, assumes that if the wounds which caused Kaine's death were inflicted with a "knife, or some similar weapon," the defendant was the party who made use of the knife or weapon.

The last clause is in these words : "also the manner in which the knife was used by the defendant, if the jury believe, from the evidence, that a knife or some similar weapon was used."   Now there was really no proof in the case that Reins used any weapon at all, or ever inflicted the wounds upon Kaine.   Dr. Hall testified (under the objection

of the defendant) that such an instrument (knife) as the one shown him might have produced the wounds; but there was no evidence that the knife shown Dr. Hall, belonged to Reins, or that he ever saw it before, or that it was ever in his possession; no knife was seen by any one at the time or during the fray, either in Reins' hands or about the premises.

The witness Foley was present all the time during the last struggle, when the wounds upon Kaine must have been inflicted; she was the only person present besides Kaine and Reins, and was evidently inimical to Kaine and friendly to Reins; might she not have inflicted the wounds? But the consideration of this question was entirely withdrawn from the jury, and they were instructed that if any knife or similar weapon was used, Reins used it. That instruction also contravenes another equally important and decisive principle of law laid down by this court, in *Campbell* v. *The People*, 16 Ill. 20, where the court make use of the following language: "Although it may be positively proved that one of two or more persons committed a crime, yet if it is uncertain which is the guilty party, all must be acquitted."

V. The court below, in the first and fourth instructions for the People, and in its modifications of the second, third and fifth instructions asked for by the defendant, seems to have ignored the alternative provided for in section 34 of the criminal code, which is in these words: "And it must appear also, that the person killed was the assailant, or that the slayer had really and in good faith endeavored to decline any further struggle before the mortal blow was given." If the other conditions provided for by the statute existed, viz., fear of loss of life, or great bodily harm, etc., then if the party killed was the assailant, or if, on the other hand, the slayer was the first assailant, but before the mortal blow was given, really and in good faith endeavored to decline any further struggle,—in either case, the killing would be justifiable.

In the case at bar, Kaine was the first assailant, yet the court below seemed to have lost sight of this fact as well as the statute, and virtually charged the jury that even if Kaine was the first assailant, yet if Reins, after being thus assailed,

willingly defended himself, and did not really in good faith seek to decline any further struggle before the mortal blow was given, they must convict him. This is neither law nor common sense. See *State* v. *Ingold*, 4 Jones N. C. R. 216. Also 24 Ill. 241.

VI. The court ought not to enlarge the terms of the statute; they are sufficiently broad without any judicial stretching. The terms made use of in the statute are, that a person under certain circumstances, in order to "save his own life, or to prevent his receiving great bodily harm," may be justified in killing his antagonist. Now, the court below, in the last clause of the fourth instruction given for the People, made use of the following language: "The threatened danger to the person must be so great as to create a reasonable belief in the mind of the person assaulted, of imminent peril to life, or the most serious bodily harm." Not "great bodily harm," but the "most serious." The most serious bodily harm would of necessity result in death, but a man might receive great bodily harm and yet live out his allotted time unmaimed. The jury must have drawn from this instruction the conclusion that unless Reins believed that if he did not kill Kaine, then Kaine would kill him, he was guilty of manslaughter. This is not the law.

For these reasons, we think the judgment of the court below should be reversed.

JAS. KNOX, for The People.

BREESE, J. This was an indictment for manslaughter, and a verdict of guilty. A motion for a new trial was overruled, and exceptions taken, and the record brought here by writ of error.

The plaintiff in error makes these points:

That it was error to instruct the jury by consent of parties to seal their verdict and separate, and meet the court the following day, when their verdict would be opened and entered of record;

In refusing to hear the affidavit of Addison Weeks, one of

the jurymen, in support of the motion to set aside the verdict, and for a new trial;

In refusing the first instruction asked by the defendant, and in modifying the second, third and fifth instructions asked by him.

The first point assumes the offense was not a misdemeanor, and therefore not within section 189 of the criminal code. That section, after providing that an officer shall be sworn to attend the jury, proceeds as follows: "*Provided, however*, That in any cases of misdemeanor only, if the prosecutor for the People, and the person on trial, by himself or counsel, shall agree, which agreement shall be entered upon the minutes of the court, to dispense with the attendance of an officer upon the jury, or that the jury, when they have agreed upon their verdict, may write and seal the same, and after delivering the same to the clerk, may separate, it shall be lawful for the court to carry into effect any such agreement, and receive any such verdict so delivered to the clerk, as the lawful verdict of any such jury." (Scates' Comp. 408.)

By the common law, in all cases, civil and criminal, it was required that a bailiff should be sworn to attend the jury, and keep them together without meat or drink, fire or candle, until they had agreed on their verdict.

If they did not agree before the departure of the judge into another county, the sheriff was required to send them along in carts, and the judge took and recorded the verdict, in the foreign county. 5 Bac. Abr., title "Juries," 369.

The section quoted allows the jury not only to withdraw from the charge of an officer, but to seal their verdict and separate as an organized jury.

The order of the court, in this case was, not to dispense with the attendance of an officer, seal their verdict and separate as a jury, but they were required to meet the court on the following day, when their verdict would be opened, and entered of record, thereby keeping the body in existence under the charge of an officer, and the verdict in their own control. In the one case under the statute, the jury would be *functus officio;* in this case, still existing. It is enjoined

on the jury, by the terms of the order of court, that after sealing their verdict and separating for the night, they should meet the court on the next morning, and deliver their verdict in due form in open court. Being so, the accused could, by no possibility, lose any advantage, or be deprived of the privilege of examining the jury by the poll, which the law gave him. This is really the only reason why a jury, in any case, should deliver the verdict into court, so that they may be polled, and disagree if they desire so to do, or if the verdict is informal, that it may be put in form in their presence.

The question then arises, independent of any statute on the subject, when parties in a case, not capital, consent to such proceedings as are here shown, is the verdict vitiated?

We cannot, seriously, discuss such a position; it is too plain for argument. We know of no ruling against it, except in the case of *The State* v. *Populus*, 12 Lou. An. R. 710, referred to by the counsel for the plaintiff in error. That case holds, that in all criminal cases, the separation of the jury, though by leave of the court, and with the consent of the accused and his counsel, will vitiate the verdict, if such separation takes place after the evidence has been closed, and the charge of the court given, and before the verdict is rendered. We understand the whole current of authority to run the other way.

In capital cases even, where life is at stake, the separation of a jury, without consent, is not of itself error, and ground for a new trial. Something more must be shown. It must be shown that the accused might have been prejudiced by it —that the jurors, or some one of them, might have been tampered with, or improperly influenced, or some means exerted over them, in consequence of their separating, so as to influence their verdict. *McKinney* v. *The People*, 2 Gilm. 553; *The People* v. *Douglass*, 4 Cowen (N. Y.) 26; *The State* v. *Babcock*, 1 Conn. 401. These were all capital cases.

*The People* v. *Rawson*, 7 Wendell, 423. In this case, which was an indictment for murder also, the court, in commenting on the various decisions on this point in civil cases, say, the doctrine is the same in criminal and even capital cases, referring to the case of *The People* v. *Douglass*. In

cases less than capital, in misdemeanors, and in all civil cases, the doctrine is too well established to be questioned. *The King* v. *Woolf*, 18 Eng. C. L. 117; 2 Blackford, 114; 2 Carter (Ind.) 435; 11 Ohio, 471; 2 Strobhart (S. C.) 178; 2 Richardson (S. C.) 119; 12 Pick. 496; 5 Hill (N. Y.) 32; 21 Mo. 461; *State* v. *Weber*, 22 id. 324.

The cases cited are cases where no consent was given. For much stronger reasons, then, where consent has been given, and entered of record, and the party deprived of no right, he should be bound by his agreement, and the proceedings held regular.

The record recites, "as the jury were about to retire to consider of their verdict, it was suggested by the prosecuting attorney, as it was late in the day, the jury had better be allowed to seal their verdict, if they should agree before the court met on the following day, and disperse, and return their sealed verdict into court on the following day; to which proposition, the defendant, by his counsel, assented, waiving all exceptions to such separation on the ground of irregularity, if the practice should be held irregular." We are clear in our opinion, that the verdict is not vitiated by this action of the court. No other rule could be adopted consistent with a proper, honest, and efficient administration of the law. Where consent has been given, and even without it, and it is not shown improper influences have been exerted upon the jury during their separation, and no ground afforded for the suspicion of any such influences, it would be but trifling with the administration of the criminal law, to listen and give weight to the objection. The statute has nothing to do with this case.

The refusal of the court to hear the affidavit of Addison Weeks, one of the jurors, was correct. Affidavits cannot be read to impeach the verdict of a jury. The juror should have declined to hear the remark of the sheriff. The officer might be fined for his improper conduct, but it could not vitiate the verdict.

As to the instructions, we are of opinion, a portion of the second, asked for by the People, was improper, as there was no

evidence that the defendant had a knife.   It was wrong then, for the court to insert in this instruction, the words, "also the manner in which the knife was used by the defendant," thereby telling the jury the defendant had used a knife.   A portion of the fourth instruction given for the People, is also objectionable.   The charge was manslaughter, and the defense was justification.   The words of the statute are, in substance, that a person indicted for this offense, may prove that, in order to save his own life, or to prevent his receiving "great bodily harm," he may kill his antagonist.   "Great bodily harm" falls far short of the most serious bodily harm; the one may endanger life, the other not.

The first instruction asked by the defendant should have been given.

Section thirty-two of our criminal code defines justifiable homicide to be "the killing of a human being in necessary self-defense, or in the defense of habitation, property or person, against one who manifestly intends, or endeavors by violence or surprise, to commit a known felony, such as murder, rape, robbery, burglary, and the like, either upon person or property, or against any person or persons who manifestly intend and endeavor in a violent, riotous, or tumultuous manner, to enter the habitation of another, for the purpose of assaulting or offering personal violence to any person dwelling or being therein."

We perceive no error in the modification of other instructions, except that the word "may," at the close of the third instruction, should be "shall."   It is the right of the accused, under a well founded doubt of his guilt, to have a verdict of acquittal; the jury have no discretion about it.   For the reasons given, the judgment of the court below is reversed, and the cause remanded.

*Judgment reversed.*