Menzies v. Kennedy.

THOMAS MENZIES, Respondent, *v.* P. J. KENNEDY, Appellant.

Appellant Must Show Injury. Where, though the evidence is very conflicting, there is substantial testimony to sustain the verdict, and the law touching the different theories of the losing party is fairly stated in the charge of the court, the verdict and judgment will not be disturbed.

Written Instrument not to be Varied by Parol. Oral testimony, offered with evident intention of varying and controlling the plain terms of a written instrument, and not to establish an equity superior to the writing, is not admissible.

Exclusion of Evidence Afterwards Admitted. The exclusion of testimony at one stage of a trial cannot be availed of as error, if it appear that afterwards the desired evidence all came in.

Damages for Conversion of Stock—Immaterial Error. In a suit for conversion of mining stock: *Held,* that though it was error to charge the jury that plaintiff was entitled to recover the highest market value of the stock between the time of demand and the commencement of the action; yet, if it appeared that the jury, notwithstanding the charge, gave the lowest instead of the highest price, the error in the charge was immaterial.

Menzies *v.* Kennedy.

CHARGING A FACT WITH A PRECEDING "IF." Where in a suit for the conversion of mining stock the court, in instructing the jury, used the language, "If the plaintiff consented to place his stock in the original pool, which pool was subsequently broken up," etc.; and it was objected that this was charging as a fact that the pool was broken up : *Held*, that the word "which" as there used was dependent on a *if* to be supplied and should be understood as if, instead of "which" the words "and if that" had been employed.

STATING TO JURY A FACT NOT CONTROVERTED. There is no error in stating to the jury as a fact a circumstance that is testified to by both parties, and about which there is no controversy.

SEPARATION OF JURY WITHOUT OBJECTION. Where on the trial of a civil case the court, in the presence of the parties and their attorneys and without objection from any one, allowed the jury to separate during recess : *Held*, that the consent of all parties must be implied and that, in the absence of any showing of harm, the verdict would not be disturbed.

APPEAL from the District Court of the First Judicial District, Storey County.

This was an action to recover the value of two hundred and fifty shares of the capital stock of the Lady Bryan Mining Company, claimed to have been sold to plaintiff by defendant, but left in defendant's possession and afterwards converted by him. It appears that the sale took place in May, 1871, and that the defendant gave the plaintiff at the time the following paper:—

"VIRGINIA CITY, May 13, 1871.

"Received from Mr. Menzies five hundred dollars for two hundred and fifty shares of the capital stock of the Lady Bryan M. Co., which said shares are to be retained by me and sold for the benefit of said Mr. Menzies, and the proceeds accounted for to him; or in case the same or a part of said shares cannot be sold within a reasonable time, then the same are to be delivered to him.

"$500.                              "P. J. KENNEDY.

"[Revenue stamp, canceled]."

11

The defendant claimed that the plaintiff, instead of buying so much stock as indicated in the foregoing paper, bought in fact only an interest in a pool, made up by certain parties, among whom were the defendant, John Mallon, William Sharon, J. P. Jones, Thomas Sunderland and F. A. Tritle, for the purpose of holding and disposing of the entire stock of the Lady Bryan Mining Company on joint account.  He alleged that the paper, though signed by him, was in part executed by him for the persons forming the pool, and that plaintiff so understood the transaction.  The plaintiff on the other hand claimed that he did not buy an interest in a pool or look to any one except defendant to carry out the agreement made by him; that it was true the stock had been put into a pool but he had no connection with it or any of the parties to it except defendant, and that, if defendant in giving him the paper was acting as an agent, it was without his knowledge,

It further appeared that the stock, amounting in all to eighteen thousand shares, was put upon the market; but that only about five thousand shares were sold.  These sales took place in May, June and July, 1871; but nothing further was done with the remainder of the stock until April, 1872, when it is alleged a new pool was formed and the remainder sold.  In the latter part of the same month plaintiff demanded his stock of defendant; and afterwards, on account of non-delivery to him, commenced this action.

On the trial in the court below, the defendant being on the witness stand, his counsel propounded to him the following question, "Did you ever sell any Lady Bryan stock to the plaintiff?"  The plaintiff objected to the question on the ground that the testimony sought to be adduced tended to vary the written instrument above given.  The court sustained the objection and defendant excepted.  Also, the following question, "Did you ever have in your possession any of the stock mentioned in this receipt?" to which the

Menzies v. Kennedy.

same objection was interposed, with the same result. Defendant also offered to prove by John Mallon that the pool first above referred to was owned jointly by the plaintiff and others; that no particular stock was owned by any one, and that the receipt merely specified the interest of the plaintiff in the whole. To this proposed testimony plaintiff objected; the objection was sustained, and defendant excepted.

In addition to the instruction, copied in the opinion, the court below also gave the following: "If the plaintiff consented to place his stock in the original pool, which pool was subsequently broken up, this fact of itself was no authority to defendant to place plaintiff's stock in any other pool than that which was made at the time of the contract. And if defendant without plaintiff's knowledge or consent used the plaintiff's stock to form another pool on or about the 22d day of April last and for that reason refused to deliver the stock to plaintiff, that would amount to a conversion of the stock; and plaintiff would be entitled to recover." It further appeared that while the case was on trial the jury were allowed to separate during a recess of about an hour; but that when the court made the order allowing the separation defendant and his counsel were present and made no objection.

There was a verdict and judgment in favor of plaintiff for sixteen hundred and twenty-five dollars and costs. Defendant moved for a new trial, which was overruled, and he then appealed from the order and judgment.

*Mesick & Wood*, for Appellant.

I. The plaintiff is not entitled to maintain the action. At the time of the delivery to him of the instrument, he became a member of the pool association and purchased and held his stock as one of said association, for whom defendant acted as agent. The affairs of that association are still unsettled, and all that the plaintiff can do is to call for an

accounting and bring his action to have the affairs of the association settled.

II.   The shares belonging to plaintiff had been sold prior to his demand.   It clearly appears that of the 18,000 shares originally held at least 4000 were sold according to the original agreement; and of those a portion of plaintiff's must have been disposed of.   So far as they were concerned, plaintiff certainly was not entitled to recover any more than the amount which defendant may have received for them; and he cannot recover that in this case, because no accounting has been had.   It also appears that the whole of plaintiff's stock was sold before any demand.   It may be contended, perhaps, that this last sale was not made in a reasonable time; but when it is considered that the operation embraced a large quantity of stock, that an entire mine was to be floated on the market, plaintiff must be held to have known this and to have consented that his interest should fare with the others.   Under these circumstances one year was not an unreasonable time.   And defendant had the right to consider that he was not exceeding his authority from plaintiff's own conduct in not, during that time, making any demand.

III.   There was error in sustaining the objections to the question as to whether defendant ever had or sold any of the stock mentioned in the receipt and in refusing to allow defendant to show by John Mallon the object and purpose of the receipt.   The object sought was plain.   It was merely to show that defendant never had in reality any of this stock, and that the entire transaction was a sale to plaintiff of an interest in the pool, and not of any particular shares; in short to show the objects and purposes of the parties in executing the instrument.   *Pierce* v. *Robinson,* 13 Cal. 116.

IV.   There was error in the instruction that plaintiff was entitled to "recover the highest market value of the stock

from the time of demand until the commencement of this action." *Boylan* v. *Huguet*, 8 Nev. 345. Also in the instruction that the original pool was broken up and that such fact alone was no authority to defendant to place plaintiff's stock in a new pool, and that if he did so it would amount to conversion. The fact of the breaking up of the first pool was a question in the case and for the jury to decide.

V. There was error in allowing the jury to separate without consent of defendant. The statute plainly requires something more than a failure to object; it requires consent. Practice Act, Sec. 162; 3 Day, 289.

*Lewis & Deal,* for Respondent.

I. The contract set out in the record was the contract of the defendant Kennedy. There is nothing in the instrument showing that he was acting as an agent ; and all the evidence, drawn out with the object of showing that he was acting as agent and not as principal, should not have been received. But admitting it to be true, it would not entitle defendant to a judgment. The rule in regard to written contracts is well established, that in order to bind a principal the instrument must purport on its face to be the contract of the principal and his name must be inserted in it and signed by it. Story on Agency, Secs. 147, 269, 270; *Haskell* v. *Cornish*, 13 Cal. 45; *McDonald* v. *Bear River Company*, 13 Cal. 220; *Shaver* v. *Ocean Nt'g Co.*, 21 Cal. 45; *Gillig, Mott & Co.* v. *The Lake Bigler Road Company*, 2 Nev. 219.

II. Under the contract defendant had no authority to make any disposition of the stock except as provided by the terms of the contract. That was to sell the whole or part of the stock within a reasonable time or return it to respondent, if not sold. Did he sell any part of it? Both defendant and Mallon testified that after four thousand shares of the original pool were sold, no more was disposed of until the

new pool was formed; and that after such sale and before the new pool was formed plaintiff was offered his shares, but did not get them for the reason that he did not have his receipt with him at the time.

III.   The evidence attempted to be elicited by the questions asked the defendant and Mallon was inadmissible; but, if it was error to exclude the questions, the record shows that they were afterwards fully answered by the witnesses. Everything in any way relating to the transaction went before the jury.

IV.   There was no injury to appellant in the instruction of the court as to the measure of damages.   The only testimony as to the value of the stock was given by plaintiff's witnesses, who fixed it at $6 50 per share in gold coin on April 25, 1872, the day on which the demand was made, and that was the value of it fixed by the jury.   See *Boylan* v. *Huguet*, 8 Nev. 345; *Tompkins* v. *Mahoney*, 32 Cal. 231.

V.   The language of the instruction that "if the plaintiff consented to place his stock in the original pool, which pool was subsequently broken up," simply meant "if the plaintiff consented to place his stock in the original pool and if that pool was subsequently broken up."   But even if appellant's construction be placed upon the language there was no error, because there was no controversy upon this point at the trial.

VI.   The statute in reference to juries is not any more strict than was the rule before the adoption of the statute; and in no case has it been held that the separation of the jury in a civil case was an irregularity for which a new trial would be granted, unless the moving party showed affirmatively that he had suffered injury.   *Cannon* v. *The State*, 3 Texas, 31; *Welch* v. *Welch*, 9 Rich. 33; *Burns* v. *Paine*, 8 Texas, 159.   But in this case it must be implied from the circumstances that defendant consented to the separation of the jury during the recess.   Both he and his attorney were

present when the court made the order permitting the jury to separate; it was made with their knowledge; they sat by silent and raised no objection until the motion for new trial was filed. It would be unjust to grant a new trial for an irregularity that might have been presented by the party who now seeks to take advantage of it. *Stix & Co.* v. *Pump & Co.*, 37 Ga. 334; *Martin* v. *Tidwell*, 36 Ga. 345; *Riggins* v. *Brown*, 12 Ga. 371; *Brandon* v. *Graniss*, 1 Conn. 401; *Dawner* v. *Baxter*, 30 Ver. 474.

By the Court, WHITMAN, C J.:

The first and second points of appellant, claiming the evidence to be insufficient to warrant the verdict, must fail for the reason that there was a conflict of evidence, and therein substantial testimony to sustain the verdict. The law, touching the different theories of appellant and respondent, was fairly stated, and the jury found for the latter. Of course a verdict so found must stand, there being no other error.

The court did not err in refusing to allow the witness Mallon and the appellant to answer the questions stated in appellant's third point; their evident object was to vary and control a written instrument. The cases of *Pierce* v. *Robinson*, 13 Cal. 116, and others analogous, are not in point ; in such, oral testimony has been allowed to establish an equity superior to the writing ; here there was no such pretense. Again, if the ruling was error, it was cured; because at another stage of the trial, the desired evidence came in; the record shows that all the parties to the contract, or having knowledge thereof, told all they wished about it.

The court erred in charging the jury thus. If you believe from the evidence that the defendant did not sell said stock, and after a demand made for the delivery of said stock by the plaintiff the defendant failed or refused to deliver to the plaintiff the stock, plaintiff is entitled to recover the highest

market value of the stock from the time of demand until the commencement of this action.

The measure of damages was incorrect. *Boylan* v. *Huguet*, 8 Nev. 345. But as the testimony fixes only two prices for the stock, six dollars and a half at the date of appellant's demand and nine dollars at a subsequent period, and the jury despite the instruction gave the lowest instead of the highest price, the error becomes immaterial. Had the jury given the higher sum, there being no other error an appellate court would require a reduction of the amount of the verdict to correspond to the law and the facts, else a new trial. That reduction is already an accomplished fact, from the original action of the jury; hence there is no purpose in disturbing the verdict. The law given was wrong, and the jury disobeyed it; the appellant did not suffer thereby.

It is objected to the language of the court in the instruction to follow, that it finds a fact, namely the breaking up of the original pool. This is the instruction : " If the plaintiff consented to place his stock in the original pool, *which pool was subsequently broken up* \* \*." The portion objected to is underscored for the purpose of reference. The construction sought is a forced reading; the words " which pool," &c., are dependent on an *if* to be supplied, and should be understood precisely as if the words "and if that" or others synonomous, were written instead of "which." That is the obvious meaning of the court; but if not, the fact was not one in controversy, being testified to by both sides, and might as well have been stated to the jury as if admitted by the pleadings.

It is claimed that the jury was allowed to separate without consent of the parties to the action. The order of the court giving this permission was made in presence of the attorneys for either side, without objection. In so doing the court followed a custom so well recognized that the consent of the parties must be implied, in absence of any objection. It is

not pretended that any harm came to appellant by reason of this irregularity, if under the circumstances it can be so considered; and it would be unusual practice to reverse a case upon the mere fact of separation under permission from the court.

In the case of *Nicolls* v. *Whiting*, quoted as authority for the direction given the jury in *Lester* v. *Stanly*, cited by appellant (3 Day, 287), the separation was violent and against the express direction of the court. This case is not treated as authority by the supreme court of errors of the state where rendered; or else is not held to be in point on the present proposition. *State* v. *Babcock*, 1 Conn. 401.

The order and judgment of the district court are without error and are hereby affirmed.