CARLO GRESCHIA

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

1. CRIMINAL LAW—*defense of habitation—degree of force allowable.* Upon the trial of a party on the charge of murder, it appeared the deceased went to the room of the prisoner for a lawful purpose, and while there demeaned himself properly, though some altercation occurred between them, and hard words exchanged. The deceased, however, left the room, and proceeded down a stairway, remarking as he went, to the prisoner, "go, with all the money you have got—hasn't your wife to beg every day?" to which the prisoner replied, "you go, you rascal, go." At this, the deceased turned to go up the stairs again, in an angry mood, when the prisoner said, "come back, I will fix you." As the deceased advanced to the door of the prisoner's room, unarmed, in the act of entering it, it being open, the prisoner seized a rolling-pin, and wielding it with both hands, struck deceased three or four blows, fracturing his skull so seriously that he died therefrom the following day. The homicide was regarded entirely inexcusable, under the circumstances. The prisoner did not seek to avoid a collision, but invited it, and a term of one year in the penitentiary was a very much lighter punishment than the jury would have been justified in inflicting upon him.

2. It was not erroneous, in such case, for the court to instruct the jury that, in considering whether the killing was in defense of habitation, they should consider the attending circumstances, the conduct of the parties at the time and immediately previous to the killing, and the means and force used, as bearing upon that question.

3. And the jury might properly further consider, in determining whether the killing was in self-defense, whether the force used in repelling

the deceased, in its amount, and character, was not such as a reasonable mind would regard as unreasonable, under the circumstances.

4. If the use of a deadly weapon was not necessary, or apparently necessary, in order to prevent the deceased entering the room of the prisoner and committing, or offering to commit, an assault upon him, and he could reasonably and safely have avoided using the weapon, it was his duty to have done so, even though the deceased was returning to the prisoner's room with a quarrelsome intent.

WRIT OF ERROR to the Superior Court of Chicago; the Hon. WILLIAM A. PORTER, Judge, presiding.

This was an indictment against Carl Gresur, *alias* Carlo Greschia, for the murder of Stephania Lagarmarsen.

The circumstances under which the homicide was committed, are set forth in the opinion of the court.

On behalf of the prosecution, the court instructed the jury as follows:

1. The court instructs the jury, that "manslaughter is the unlawful killing of a human being, without malice, express or implied, and without any mixture of deliberation whatever. It must be voluntary, upon a sudden heat of passion, caused by a provocation apparently sufficient to make the passion irresistible or involuntary, in the commission of an unlawful act, or a lawful act, without due caution or circumspection."

2. The court further instructs the jury, that "involuntary manslaughter shall consist in the killing of a human being without any intent to do so, in the commission of an unlawful act, or a lawful act, which probably might produce such a consequence, in an unlawful manner."

3. The court further instructs the jury, that, under the indictment in this case, which is for murder, the jury may and should find the defendant guilty of manslaughter, if they believe, from the evidence, that he is guilty of manslaughter. And if they find him guilty of manslaughter, they must fix in their verdict his punishment, which must be confinement in

the State penitentiary for his natural life, or any number of years, and not less than one year.

4. The court further instructs the jury (in the words of the statute) that "if a person kill another in self-defense, it must appear that the danger was so urgent and pressing that, in order to save his own life, or to prevent his receiving great bodily harm, the killing of the other was absolutely necessary."

" A bare fear of any of these offenses, to prevent which the homicide is alleged to have been committed, shall not be sufficient to justify the killing. It must appear that the circumstances were sufficient to excite the fears of a reasonable person, and that the party killing really acted under the influence of those fears, and not in a spirit of revenge."

5. The court instructs the jury, that if they believe, from the evidence, beyond a reasonable doubt, that the deceased, Lagarmarsen, and the defendant, Greschia, had a quarrel, with words, in or near the defendant's room, and on the stairs leading to said room; and that the deceased, after going a part way down stairs, turned about and went up the stairs, as if going to said room, to meet said defendant, with the purpose to further continue said quarrel, and that the deceased had no weapon or dangerous instrument; and that, when deceased got nearly to the door of said room, or to it, the defendant wilfully, intentionally and feloniously, struck the deceased several violent and severe blows on the head with the club mentioned by the witnesses and shown in evidence; and that such club was a dangerous and deadly weapon, when it was not necessary, or apparently necessary, in order to prevent the deceased from entering said room and committing, or offering to commit, an assault upon said defendant, and when the defendant could have reasonably and safely avoided using such club in the manner aforesaid, then the jury should find the defendant guilty of manslaughter, if they believe, from the evidence, that deceased died from the effects of such blows.

The following instructions were given for the defendant, that portion in brackets being modifications by the court, of the instructions as asked:

1. If the jury believe, from the evidence, that the defendant inflicted the fatal blow upon deceased in self-defense, while the deceased was manifestly intending and endeavoring, in a violent manner, to enter the habitation of the defendant, for the purpose of assaulting or offering personal violence to the defendant, being therein, then the killing was justifiable, and the jury ought to acquit the defendant. [But the jury, in considering whether the killing was justifiable, on the ground that the killing was in self-defense, while the deceased was endeavoring, in a violent manner, to enter the prisoner's habitation, should consider the circumstances attending the killing, and the conduct of the parties at the time and immediately previous thereto, and the means used, and the degree of force used by the prisoner in making what is claimed to be this self-defense, as bearing upon the question, whether the blows given were actually given in self-defense, or whether they were given in carrying out an unlawful purpose. If the force used was unreasonable in amount and character, and such as a reasonable mind would have so considered under the circumstances, it is proper for the jury to consider that fact in determining whether the killing was in self-defense.]

2. If the jury believe, from the evidence, that, just prior to his death, the deceased attempted, in a violent manner, to enter the dwelling of the defendant, for the purpose of assaulting or offering personal violence to the defendant, being in said dwelling, or any other person dwelling or being therein, and that the defendant, in [reasonably] resisting such attempt of the deceased, unintentionally and without malice killed the deceased, then the killing was justifiable or excusable, and the jury ought to acquit the defendant. [The jury, in considering whether the killing was in defense of habitation, should consider the circumstances attending the killing, and the conduct

of the parties at the time, and immediately previous thereto, and the means and force used, as bearing upon the question of whether the killing was in defense of habitation.]

The jury found the defendant guilty of manslaughter, and fixed his term of confinement in the penitentiary at one year, and judgment was entered accordingly. The defendant thereupon sued out this writ of error.

Messrs. MILLER, VAN ARMAN & LEWIS, for the plaintiff in error.

Mr. CHARLES H. REED, State's attorney, for the people.

Mr.CHIEF JUSTICE BREESE delivered the opinion of the Court:

The plaintiff in error was indicted in the superior court of the city of Chicago, for murder, and a verdict rendered of manslaughter, and sentencing him to confinement in the penitentiary for one year, on which the court entered judgment.

The points made here, by the plaintiff in error, question the correctness of this finding, and also the ruling of the court upon the instructions.

As to the finding, we have examined with care all the evidence in the record, and are constrained to say, it is of such a character as to have justified the jury in imposing a sentence upon the prisoner much more severe than they did impose, for we are unable to see a single mitigating circumstance in favor of the prisoner, in the whole case.

The deceased was at the prisoner's room for a lawful purpose. He had been an inmate of his family, a boarder in it, keeping his clothes there. His business or inclination induced him to leave Chicago for Rock Island, and while there, he wrote to one of the witnesses to get his clothes from the prisoner's room and send them to him by express. This was not done, and after an absence of some weeks, deceased returned

to Chicago and went to the prisoner's room for his clothes, when some altercation occurred between them and hard words exchanged. The deceased got his clothes, and was proceeding down stairs with them under his arm, when the deceased said to the prisoner, " go, with all the money you have got, hasn't your wife to beg every day?" to which the prisoner replied, "you go, you rascal, go." At this, the deceased turned to go up the stairs again, when the prisoner said, " come back, I will fix you." As the deceased advanced to the door of prisoner's room, and was in the act of entering it, it being open, the prisoner seized a rolling-pin, and wielding it with both hands, struck deceased three or four blows with it, on his head, fracturing the skull, the fracture extending clear through from the orbital process to the occipital bone, inflicting a wound " past all surgery," and of which the man died on the following day. The deceased did not, as insisted by the prisoner's counsel, seek to enter the prisoner's room forcibly. He was there in the first place, rightfully, to get his property, which he had left there. The prisoner made no objection to his going there for that or any other lawful purpose, and while in the room he demeaned himself properly. He had no weapon, nor did he give any indications of a quarrelsome intent. When he was leaving peaceably, with his clothes, irritated by a remark the prisoner made while deceased was descending the stairs, he suddenly turned, and in angry mood went towards the prisoner, the prisoner having told him to " come on."

The case has but few points of resemblance to the case of *Reins* v. *The People*, 30 Ill. 256, on which the prisoner's counsel seem to rely. In that case, the prisoner had retreated to Mrs. Foley's house, and seeing the deceased, with whom he had been fighting, coming to the house, the door was closed, and in the forcible attempt of deceased to open the door, the fatal blow was inflicted. To make this case like Reins' case, the prisoner, instead of using this murderous weapon against an unarmed man, crushing his skull with it, even at the very threshold of his open door, had, on seeing the approach of the

deceased, quietly shut and bolted the door, and the deceased had then attempted to force an entrance, it might be, the prisoner would have been justified in using the weapon he did, if there were real grounds for apprehending violence from the deceased, should he succeed in forcing the door, and if no other ready means of self-preservation were at hand. But the prisoner invited deceased to " come on." Reins did not, but sought to keep the aggressor beyond his reach, by fleeing to a house and closing the door.

To say that a man having ready means at hand to protect himself from an assault, if one was threatened, which there was not in this case, and this, too, without running away or leaving his tracks, shall neglect such means, and, on the instant, before an assault is made, or any force or violence used, or even threatened, shall seize a deadly weapon and with it inflict deadly blows upon an unresisting victim, is justifiable, would be placing human life in a most precarious condition indeed. It would be making human blood very cheap.

The facts in this case show malice on the part of the prisoner, and he may thank the jury, that they have viewed his outrage so leniently. There is not the least particle of justification apparent in the prisoner's act, and community, while he himself ought to exult, must regret the criminal law of the country should be so mildly dispensed as in this case.

As to the instructions, we can perceive no error in them. Those given by the court for the prisoner, were as favorable to him as he had any right to expect, or the law of the case allowed.

There being no error in the record, the judgment is affirmed.

*Judgment affirmed.*