At a Court of Oyer and Terminer held at this term, Hugh Dugan was indicted and tried for the murder of Richard H. Rowe, of the first degree, in the city of Wilmington, on the thirty-first day of May preceding. There were two counts in the indictment, the first of which charged him in the usual form with the murder of Richard H. Rowe with express malice aforethought, and of the first degree under the statute; and the second with the murder of him with express malice aforethought, and of the first degree under the statute, in feloniously and willfully attempting to perpetrate a crime punishable with death, to wit, to kill and *Page 564 
murder with his express malice aforethought one Edward McGaughey, he shot and killed the said Richard H. Rowe, with all the averments usual in such a case to charge him with the murder of the said Richard H. Rowe with his express malice aforethought, and of the first degree under the statute, which provides as follows: "Every person who shall commit the crime of murder with express malice aforethought, or in perpetrating, or attempting to perpetrate any crime punishable with death, shall be deemed guilty of murder of the first degree and of felony, and shall suffer death." Revised Code, Chapter 127, Section 1.
Mr. Gray, the Attorney General, having been of counsel for the prisoner prior to his appointment to the office, did not appear in the trial of the case, and the prosecution of it was conducted in his absence by Mr. George H. Bates and Mr. Cooper, the Deputy Attorney General.
The prisoner at the time of the killing resided with his family and kept a saloon in the house at the southeast corner of Heald and Thirteenth street in the city of Wilmington, with a sitting room and a bar room adjoining it on the first floor of it, with the front door or the door leading into the bar room on Heald street, and a door on Thirteenth street opening into a passage between the sitting room and bar room and leading from the former into the latter behind the bar of it, with a window in the sitting room on Thirteenth street, at which the prisoner was seated in the sitting room with the window half up between four and five o'clock in the afternoon of that day, Saturday, the 31st of May last, with both of the outer doors fastened, when Edward McGaughey came to the saloon, and finding both of them fastened, went to the window of the sitting room where the prisoner was seated, and asked him why the saloon was thus closed up and he could not get in, and was told by him that he had ordered the saloon to be shut up, and it would not be *Page 565 
opened again that day, but going to the window of it and looking into the saloon, he saw two colored men in it near the bar, and then went back to the sitting room window and cursed and abused the prisoner because he would not let him in, and threatened that if he did not let him in, he would break the door in and would whip him, which he said he could do in two minutes. He then went to the door on Heald street and again attempted to open it. Richard H. Rowe, the deceased, who with Mrs. Dugan the wife of the prisoner, had been in the sitting room with him while McGaughey was abusing and cursing him at the window of it, then remarked, for peace sake let us admit him, and went to the door on Thirteenth street followed by the prisoner close behind him, and unbolted the door and let him in, the prisoner saying nothing until he entered, when he called him a rascal and told him he had tried to raise a fuss with him, and he would give him enough of it. McGaughey then struck at the prisoner with his fist and slightly grazed him on his breast, but by quickly moving back a step the prisoner avoided the full force of the blow. McGaughey then drew back his right arm to strike him another blow when Mrs. Dugan caught him by the arm and prevented him from striking the prisoner, who then passed quickly into the bar room, while McGaughey, Rowe and Mrs. Dugan passed into the sitting room, and where Rowe and McGaughey commenced talking together and standing face to face, Rowe with his hands resting on McGaughey's shoulder, with his back to the bar room, and McGaughey facing it. There was a small revolver lying on a shelf behind the bar in the bar room, and as the prisoner passed into it and when about five feet from the door-way leading into it, he was seen to take the pistol from it, and stepping to the sitting room door he raised it to a level with his shoulder and pointing it in the direction in which Rowe and McGaughey were still standing as before described, fired one barrel of it, when Rowe immediately fell to the floor and soon after expired. Rowe was considerably taller than McGaughey, *Page 566 
and it was further observed that just as the pistol was discharged McGaughey who was directly facing it, dodged his head, while at the same instant Rowe turned his to the left in the direction of it. The post mortem examination of the wound disclosed that it was produced by a small pistol bullet which penetrated the back part of the left temple and passed almost horizontally across the base of the brain and slightly backward from the point of entrance to the depth of six inches. Some of the witnesses stated that it was not more than two minutes after McGaughey had entered that the pistol was fired, and others that it was not more than four minutes. Immediately after the pistol was fired the prisoner went to the door on Thirteenth street and exclaimed, for God's sake wont some one run for a doctor, I have shot poor Dick! And no one responding to his call, he afterwards went in search of the nearest physician, and meeting a policeman on the street informed him of the occurrence and said he would give himself up, and when asked by him how it happened, he stated that Rowe had opened the door and let McGaughey into his house, and he shot at McGaughey and killed poor Dick. It was also proved that the prisoner and the deceased had always been on friendly terms.
asked the Court to charge the jury as to the character and degrees of the crime of murder and its necessary ingredients; and that the law presumed malice from the act of killing, and the burden rested on the prisoner to show the contrary by competent evidence. Whart. onHomicide, 178. Com. v. York, 9 Met. 93. State v.Ward, 5 Harr. 499. State v. Windsor, 5 Harr. 538. And particularly would malice be presumed in law from the use of a deadly weapon when it was committed without any, or a considerable provocation.Kilpatrick, v. Com. 31 Pa. 198. And if the prisoner out of malice towards Edward McGaughey shot at him, but missed him and killed Richard H. Rowe, that it was no less a murder than if he had killed Edward McGaughey, *Page 567 
the person intended; and whatever would have been the offense had he killed McGaughey, was the offense in killing Rowe. Or in other words, the intent with which the ball was fired, fixed the grade or character of the crime, and if it was fired with malice, malice rode upon the ball, and if the death of a reasonable creature in being resulted therefrom, it was murder, and if fired with express malice aforethought, it was murder of the first degree. Agnes Gore's Case, 9 Rep.
81. 1 Hale, 436. 1 Hawk. 99. Saunder's Case, 473. 1Russ. on Crimes, 452. Rex. v. Lewis, 25 E. C. L. 373.Rex v. Conner, 32, E. C. L. 696 Whart. on Homicide,
42, 44. 1 Whart. on Crimes, Sec. 712 2 Whart. on Crimes,Secs. 965, 967, 997. The State v. O'Niel, ante p. 468.
That under the second clause of the first section of our statute if the jury should believe that at the time the fatal shot was fired, the prisoner with express malice towards Edward McGaughey intended to kill him, then he was attempting to perpetrate a crime punishable with death, and that the killing of Richard H. Rowe while engaged in such an attempt was murder of the first degree. Rev. Code 764, Sec. 1. And even, if the jury should believe from the evidence that McGaughey assaulted the prisoner, unless the assault was of a grossly aggravated character and the prisoner resented it immediately in the heat of blood, it could not reduce the killing below the crime of murder. 2 Whart.on Crimes, Secs. 970, 971, 972, 985. 1 Russ. on Crimes 433, 435. Kilpatrick v. Com., 31 Pa. 198. A trespass on another's land is not a sufficient provocation to reduce a homicide below the crime of murder. Ros. Cr. Ev. 769. And that no ordinary assault, or even batter)', will justify the use of a deadly weapon. Whart, onHomicide, 188, 189, 194, 195. 1 Russ. on Crimes, 439.Kilpatrick v. Com., 32 Pa. 198. But even, if the character of the assault had been a sufficient provocation in contemplation of law to reduce the killing from murder to manslaughter, provided it was committed immediately in the heat of blood, yet, if there had been, after the provocation, *Page 568 
a sufficient interval for the blood to cool and for reason to resume its seat before the mortal wound was given, the offense would amount to murder. 1 Russ. on Crimes, 442. Whart. on Homicide, 179, 180, 181, 182, 183. 2 Whart. on Crimes, sees. 984, 987, 990, 993, 996. Rex. v. Hayward, 25 E. C. L. 371. Kilpatrick v.Com., 31 Pa. 198. And that while the plea of self-defense is a perfectly good one when made out, yet it must appear to the satisfaction of the jury that the prisoner when defending himself was in immediate danger of having his own life taken by his assailant, or of suffering enormous bodily harm, from which he could not escape but by taking the life of his assailant. The State v. Brown, ante p. 539. But when there was evidence of express malice, no provocation could either excuse or extenuate the offense. Arch. Cr. Pr. Pl. 700. In conclusion they would particularly ask the Court to charge and instruct the jury in regard to the nature and sufficiency of the provocation required in law, to reduce a case of felonious homicide from the crime of murder of the first or second degree to that of voluntary manslaughter.
Bird, for the prisoner. There were two counts in the indictment, the first that in the attempt to kill McGaughey with express malice aforethought, the prisoner killed Rowe with express malice aforethought, and was therefore guilty of murder in the first degree, and was framed under the second clause of the first section of the statute. The other was a general count at common law based on the same allegation of fact, and for murder of the first degree, and was based on the assertion that he intended to kill McGaughey with express malice aforethought in the attempt made on his life, but missed him and killed Rowe, and upon the general principle of the common law, independent of the statute, that whatever would have been his offense had he killed McGaughey in the attempt, would be his offense in killing Rowe. And such was unquestionably the principle of law which must govern the case; *Page 569 
for if it would not have been murder with express malice and of the first degree under the facts and circumstances proved in the case, had he killed McGaughey in the attempt, then the killing of Rowe under the circumstances could not have been, according to that general principle of law, any greater offense, or with malice aforethought and murder of the first degree; therefore, if such was the character of it, the case did not, and could not come within the meaning or letter of the first section of the statute, or of the second clause of that section.
Express malice aforethought is where one person kills another with a sedate, deliberate mind and formed design, evidenced by external circumstances showing the inward intention, such as lying in wait, antecedent menaces, former grudges and concerted schemes to do the party some bodily harm. Whart. Cr. Law, sec. 945. And that was the definition of express malice aforethought necessary to be shown in order to establish a case of murder of the first degree under our statute, which this Court had always recognized and laid down. As distinguished from it, and constituting the criterion of murder of the second degree under it, malice aforethought is implied by law from any cruel, deliberate act however sudden, done by one person to another which results in his death, without any, or without a considerable provocation. Stev. Dig. Cr. Laws, 384. That is to say, where one suddenly kills another without a sedate, deliberate mind, and formed design to commit the act, and without any, or a considerable provocation, it constituted murder with implied malice, and of the second degree under the statute. Whart. Cr. Law, sec. 1113. TheState v. List, ante p. 133. 19 Wend. 569. 23 Ala. 28.8 Mich. 150. 18 Mich. 314. 25 Mich. 406.53 Ill. 295. But malice whether express or implied, was a matter of fact to be proved to the satisfaction of the jury, for there could be no murder of either degree without proof of either express or implied malice. He then reviewed the evidence and contended that the gross and violent abuse of the prisoner by McGaughey at the window of *Page 570 
the sitting room on a public street of the city of Wilmington, because he would not let such a man into his house, his repeated threats to break in the door, and the violent assault made by him on the prisoner in his own house as soon as he was admitted into it by his unfortunate friend, Rowe, for the sake of peace, and to stop the gross abuse and violent threats he was then making on the street to break into and whip him in his own house, not only negatived the existence of either express or implied malice, but constituted such a provocation, followed as it instantly was by the discharge of the pistol at him by the prisoner, in the phrensy of sudden passion and the heat of blood produced by such an attack made on him in his own house, as would clearly suffice to reduce the offense to manslaughter at least. But he proceeded further and contended that if in such a situation and under such circumstances, the prisoner believed from the rage and violence and threats and the actual attack made upon him by McGaughey, that his life was in imminent peril, or he was in immediate danger of suffering great bodily harm from him, then he was justified in his attempt to shoot him in self-defense. He also contended that there was enough in the evidence to warrant the belief that even the firing of the pistol, as well as the melancholy result of it, was purely accidental on the part of the prisoner.
Bates, replied.