CANCEMI, plaintiff in error, *v.* THE PEOPLE, defendants in error.

The statute (2 *R. S.*, 599, § 45) providing for a *certiorari*, to certify diminution, variance or other defect in a record, is applicable to proceedings on writs of error in criminal as well as civil cases.

The statute prescribing the contents of the return to writs of error in criminal cases, and directing the court to render judgment thereupon, does not limit its general power to bring before it such proceedings, not contained in the record made up below, as are necessary for the correction of errors.

Where, in addition to the formal record and bill of exceptions required as a return to the writ of error, the return includes other matter which the appellate court might, upon diminution being alleged, have brought before it by *certiorari*, such matter is to receive the like consideration, and, if it discloses error, to have the same effect as if returned in obedience to the requisition of a *certiorari*.

Upon a conviction for murder in the Supreme Court, the *postea* in the formal record showed a trial and verdict by twelve jurors; the return further showed that, subsequent to the trial, the justice presiding thereat qualified the *postea* by his certificate, sent up to the court at general term, that during the trial one of the jurors was withdrawn, under a stipulation of the prisoner consenting thereto, and also that by the record the cause should appear to have been tried by twelve jurors; that the prisoner made the fact thus

brought out a ground for motion in arrest of judgment; that the court directed the fact thus certified should be stated among the reasons assigned in arrest of judgment, and afterwards, at special term, directed the certificate, and reason for arrest of judgment, founded thereon, to be annexed to the record.

*Held:* 1. That such order was within the power of the court, at special term; 2. That the certificate became a part of the *postea*, and rendered the record, into which it was incorporated, consistent in all its parts; 3. That, therefore, the facts stated in it are not within the rule that nothing *dehors* and contradicting the record can be alleged for error; 4. That the consent of the prisoner to his trial by less than a full jury of twelve was a nullity, and the conviction illegal.

·APPEAL from the Supreme Court. The appellant was indicted upon a charge of murder. After some progress had been made in the trial, a juror was withdrawn in pursuance of a stipulation, signed in open court, by the prisoner, his counsel and the counsel for the people, which provided, in terms, "that the verdict in this cause be rendered by and taken from the remaining eleven jurors, and that the twelve names now appearing of record as the jury in this cause may remain, so that by the record this cause shall appear to have been tried by twelve jurors." This circumstance being supplied, the case is fully stated in the following opinion.

*J. W. Ashmead* and *Edmon Blankman,* for the plaintiff in error.

*Lyman Tremain* (Attorney-General) and *John McKeon,* for The People.

By the Court, STRONG, J. The return to the writ of error in this case contains a formal record of judgment, setting forth an indictment against the plaintiff in error, in the Court of General Sessions of the Peace, in the city and county of New York, for the crime of murder: the plea of the plaintiff in error traversing the indictment: the removal of the indictment into the Court of Oyer and Terminer of said city and

county, and subsequently into the Supreme Court: the *postea* or certificate of the justice who held the Circuit Court at which the trial of the indictment was, by a general term of the Supreme Court in the first judicial district, ordered to take place, and was had: the proceedings at the trial, showing that a verdict of guilty was rendered, and the judgment of the Supreme Court, at a general term in said district, sentencing the plaintiff in error to the punishment of death. This record is signed by the four justices of the Supreme Court, before whom, it is stated in the record, the general term was held at which the judgment was given. A bill of exceptions, setting forth portions of the testimony, and several exceptions to rulings at the trial upon questions of evidence, is also embraced in the return, which, it is conceded on the part of the people, is to be regarded as a part of the record, and as such to be properly before the court. The *postea*, embraced in the formal record of judgment as above stated, shows that twelve jurors, whose names are given, were duly chosen, sworn, and empanneled to try the indictment; and afterwards, on a specified day, the trial having been begun and duly continued to that day, rendered their verdict. The bill of exceptions states that the trial was before the justice holding the Circuit Court, and a jury thereof, called, empanneled and sworn, and that the jury found the prisoner guilty of the murder charged in the indictment.

In addition to the matters above mentioned, the return to the writ of error includes a certificate of the justice before whom the Circuit Court, at which the indictment was tried, was held, stating to the Supreme Court that after the jury had been empanneled and sworn, and the trial of the prisoner commenced, a stipulation, consent and agreement, of the prisoner, his counsel, and the counsel on behalf of the people, annexed to the certificate, was presented to the court, and the juror, Frederick Muller, was withdrawn by the express request and consent of the prisoner, and under

and in pursuance of such stipulation. The stipulation is next set forth at length, with a statement that it was handed to the court and ordered on file, and that the said Frederick Muller was permitted to withdraw from the jury box. Following the certificate and ·stipulation are several reasons stated to have been filed in arrest of judgment, among which is, that it appears by the said certificate, and the papers annexed thereto, that said juror was permitted to withdraw from the jury, and that the verdict was rendered by eleven jurors only, which reasons, it is stated, were after argument overruled by the court. It is then added that several reasons for a new trial were filed, which are given in full, being the exclusion of evidence at the trial, and presenting the same questions which arise upon the bill of exceptions, and which reasons, it is stated, were subsequently argued and overruled.

The proceedings on the arraignment of the plaintiff in error are also stated, from which it appears that he urged, as a reason why judgment should not be pronounced against him, that he was tried by a tribunal unknown to the common law and the constitution, viz., by eleven jurors and not twelve; and that the court overruled the same, on the ground that it appeared by the aforesaid certificate that one of the jurors was withdrawn at the request and for the benefit of the plaintiff in error, and that it was at his request the trial proceeded with the remaining jurors.

An order of the Supreme Court, at a special term in the first judicial district, duly certified by the clerk, is next given, which recites the aforesaid certificate in reference to the withdrawal of a juror, and states that the general term ordered that the fact so certified should appear as a fifth reason for a motion in arrest of judgment made by the prisoner; that this ground or reason for the motion in arrest of judgment should, therefore, be added in the form in which it appears. After which the order proceeds as follows "The motion to add to the record in this case the reasons

in arrest of judgment (as thus amended), and also the reasons for a new trial, and also the proceedings on the arraignment of the prisoner for sentence, &c., granted. and the same must be annexed to the record in this case, and be certified by the clerk. It is further ordered, that a certified copy of this order be annexed with the said papers to the record."

The principal ground of error relied on in the case, appears only by that portion of the return which is additional to the formal record of judgment, and the bill of exceptions; and it is made a point on the part of the people that this additional matter was not called for by the writ of error, and was improperly returned, and that it cannot be considered by the court. It is necessary, therefore, at the outset, to determine the question whether this matter is legally before the court, and can be regarded in connection with the residue of the return, in examining and deciding the case.

The Revised Statutes (*vol.* 2, 741, § 20), in an article relating to writs of error on judgments in criminal cases, provide that upon any writ of error being filed which shall operate as a stay of proceedings — and such is the effect of the writ in the present case — "it shall be the duty of the clerk of the court to make a return thereto without delay, containing a transcript of the indictment, bill of exceptions and judgment of the court, certified by the clerk thereof." It is further provided, by § 23, that "no assignment of errors, or joinder in error, shall be necessary in such a case, but the court shall proceed on the return thereto, and render judgment upon the record before them." It is insisted that, under these provisions, nothing could regularly be returned to the writ in this case but what is particularly specified in the section first above mentioned of the statutes, and that the court must give judgment upon the return only so far as it is in accordance with that section, disregarding everything else which it contains. We think it was not the intention of the legislature, by these sections, to prevent

the review and correction of errors, in cases to which the sections relate, appearing in the out-branches of the record, and which are, independent of the sections, proper subjects of a writ of error, and that such is not their effect. This court is invested by law with "full power to correct and redress all errors that have happened or may happen in the Supreme Court" (1 *Laws of* 1847, 321, § 8); and the Revised Statutes relating to writs of error generally, and "the proceedings thereon (*vol.* 2, 599, § 45), declare that a *certiorari*, to certify any diminution, variance or other defect in any record or proceeding, may be issued, by the court to which a writ of error shall be returnable, to the court upon whose judgment such writ shall be brought, and shall be served on a clerk thereof, and shall be returned by him according to the command of such writ." This section appears to be applicable to criminal as well as civil cases. It forms part of a title prescribing the proceedings and practice on writs of error, some of the provisions of which, it is expressly declared, shall not extend to any writ of error brought upon any judgment rendered upon any indictment (*p.* 597, § 31); thereby showing that the other provisions are applicable to criminal cases, so far as they can properly be applied to them, and are in harmony with other parts of the statute specially relating to such cases. We think the statutes prescribing the contents of the return to be made by the clerk in criminal cases, and declaring that the court shall proceed upon that return and render judgment on the record before them, does not limit the general power of the court to correct and redress all errors, and for that purpose to bring before it such proceedings in a cause, not fully presented in the record made up in the court below, as may be important to enable it to do so.

If, then, the matters in the return in the present case, which are objected to, were to be viewed as out-branches of the record, which, if they had not been returned, might have been brought before the court by *certiorari*, and considered

in determining the case, there seems to be no good reason why, being in the return, they might not, so far as they disclose facts which might be assigned for error, and for which a writ of error will lie, receive like consideration, and be made a basis of decision.   We do not consider how far those matters, regarded as *dehors* the record, would be ground of error, under the well-settled rule that nothing can be alleged for error which contradicts the record; for that view of the return is not, in our judgment, the correct one in the case.

The true legal view of the return on this subject, we are satisfied, is, that the matters in question, so far as they are material in the case, are more than mere out-branches of the record; they are, in fact and in legal effect, part of the record in the Supreme Court returned to this court; as much so as the indictment, or any other part of the proceedings. The order of that court, at special term, granted the motion to add the same to the record, and directed that they be annexed thereto, which appears to have been done.   This order, if the subject of it more properly belonged to the general term, was, nevertheless, valid; there was no want of power at the special term to make it.   These matters were annexed as added to the record, and thereby became a part of it.   They must be treated, therefore, as if they were inserted in the body of the record, and be considered, in connection with the rest of the record, in regard to the errors which are alleged.   In this view, the certificate that one of the jurors was withdrawn is part of the *postea,* and qualifies it; and no basis exists for the position of the defendants in error, that these matters contradict the record.   The record originally made up in the court below, and the supplemental matters added, constitute the record of that court as returned to this court.   It shows that although the petit jury when first empanneled was composed of twelve jurors, one was afterwards withdrawn, and the trial proceeded with and the verdict was rendered by only eleven ; and no inconsistency in it appears.   The main question relied on by the

plaintiff in error, viz.: whether his conviction by a verdict of eleven jurors, although he consented and requested in the progress of the trial that one of the original panel of twelve jurors be withdrawn and that the trial proceed with eleven jurors, was legal, is therefore upon the facts before the court in the case, and it may well first receive attention. If this question shall be determined in favor of the plaintiff in error, it will not be necessary to examine any of the other questions raised.

It is conceded on the part of the people, and is very clear, that but for the consent of the plaintiff in error, he could not lawfully have been tried by eleven jurors. A legal jury, according to the common law, consists of twelve persons (2 *Hale P. C.*, 161; 1 *Chit. Crim. L.*, 505; *Bac. Ab., tit. Juries, A.; 2 Bennett & Heard's Leading Cases*, 327); our constitution (*art.* 1, § 2) declares that " the trial by jury, in all cases in which it has heretofore been used, shall remain inviolate forever;" and the Revised Statutes provide, in reference to trials in criminal cases, that the twelve first jurors who shall appear on being called, and be approved as indifferent, shall constitute the jury. (2 *R. S.*, 734, § 5; 735, § 14; 420, § 61.)

But it is insisted that the plaintiff in error might waive his right to a trial by a jury of twelve persons, and that, having done so, the trial and conviction in this case were valid. The researches of counsel have not enabled them to refer the court to any case directly in point, either in favor of or against this proposition, nor are the court aware of any such case; and hence it must be examined and decided in the light of principle, and such analogies as reported decisions afford.

There is, obviously, a wide and important distinction, between civil suits and criminal prosecutions, as to the legal right of a defendant to waive a strict substantial adherence to the established, constitutional, statutory and common law mode and rules of judicial proceedings. This distinction arises from the great difference in the nature of such cases,

in respect to the interests involved and the objects to be accomplished.

Civil suits relate to and affect, as to the parties against whom they are brought, only individual rights which are within their individual control and which they may part with at their pleasure. The design of such suits is the enforcement of merely private obligations and duties. Any departure from legal rules in the conduct of such suits, with the consent of the defendants, is therefore a voluntary relinquishment of what belongs to the defendants exclusively; and hence there is manifest propriety in the law allowing such consent to have the effect designed by it, in most cases, as to matters within the jurisdiction of the courts. The law does recognize the doctrine of waiver to a great extent; in some instances, even to the deprivation of constitutional private rights. (*Embury* v. *Conner*, 3 *Comst.*, 511; *Tombs* v. *The Rochester and Syracuse Railroad Company*, 18 *Barb.*, 583.) But it is settled that even in civil cases consent will not confer jurisdiction of the subject matter; and where such jurisdiction exists, a change, by consent, of the mode of proceeding, may be so extensive as to convert the case from a judicial proceeding into a mere arbitration. (*Green* v. *Patchen*, 13 *Wend.*, 293; *Silmser* v. *Redfield*, 19 *id.*, 21; *Dederick's Adm'rs* v. *Richley*, *id.*, 109.) The substantial constitution of the legal tribunal and the fundamental mode of its proceeding are not within the power of the parties. It was deemed necessary to insert in our present constitution a provision that "a jury trial may be waived by the parties, in all civil cases, in the manner prescribed by law," to authorize even the legislature to confer a right to dispense with that mode of trial. This is a solemn judgment of the organic law, that without such a provision, the trial by jury, in cases where it had theretofore been used, could not be dispensed with.

Criminal prosecutions involve public wrongs, "a breach and violation of public rights and duties," which affect "the

whole community, considered as a community, in its social and aggregate capacity." ( 3 *Bl. Com.*, 2; *id.*, 4, 5. ) The end they have in view is the prevention of similar offences, not atonement or expiation for crime committed. (*Id.*, 11.) The penalties or punishments, for the enforcement of which they are a means to the end, are not within the discretion or control of the parties accused; for no one has a right, by his own voluntary act, to surrender his liberty or part with his life.   The state, the public, have an interest in the preservation of the liberties and the lives of the citizens, and will not allow them to be taken away "without due process of law" ( *Const.*, *art.* 1, § 6), when forfeited, as they may be, as a punishment for crimes.   Criminal prosecutions proceed on the assumption of such a forfeiture, which, to sustain them, must be ascertained and declared as the law has prescribed.   BLACKSTONE (*vol.* 4, 189) says: "The king has an interest in the preservation of all his subjects."   And again (*vol.* 1, 133), that the "natural life, being the immediate donation of the great Creator, cannot legally be disposed of or destroyed by any individual, neither by the person himself nor by any other of his fellow creatures, merely upon their own authority." These considerations make it apparent that the right of a defendant in a criminal prosecution to affect, by consent, the conduct of the case, should be much more limited than in civil actions.   It should not be permitted to extend so far as to work radical changes in great and leading provisions as to the organization of the tribunals or the mode of proceeding prescribed by the constitution and the laws.   Effect may justly and safely be given to such consent in many particulars; and the law does, in respect to various matters, regard and act upon it as valid. Objections to jurors may be wavied; the court may be substituted for triers to dispose of challenges to jurors; secondary in place of primary evidence may be received; admissions of facts are allowed; and in similar particulars, as well as in relation to mere formal proceedings generally, consent

will render valid, what without it would be erroneous. A plea of guilty to any indictment, whatever may be the grade of the crime, will be received and acted upon if it is made clearly to appear that the nature and effect of it are understood by the accused. In such a case the preliminary investigation of a grand jury, with the admission of the accusation in the indictment, is supposed to be a sufficient safeguard to the public interests. But when issue is joined upon an indictment, the trial must be by the tribunal and in the mode which the constitution and laws provide, without any essential change. The public officer prosecuting for the people has no authority to consent to such a change, nor has the defendant.

Applying the above reasoning to the present case, the conclusion necessarily follows, that the consent of the plaintiff in error to the withdrawal of one juror, and that the remaining eleven might render a verdict, could not lawfully be recognized by the court, at the circuit, and was a nullity. If a deficiency of one juror might be wavied, there appears to be no good reason why a deficiency of eleven might not be; and it is difficult to say why, upon the same principle, the entire panel might not be dispensed with, and the trial committed to the court alone. It would be a highly dangerous innovation, in reference to criminal cases, upon the ancient and invaluable institution of trial by jury, and the constitution and laws establishing and securing that mode of trial, for the court to allow of any number short of a full panel of twelve jurors, and we think it ought not to be tolerated.

The opinion of the judges of the Court of King's Bench in the case of Lord Dacres, tried in the reign of Henry the VIII for treason, strongly fortifies the conclusion above expressed. One question in that case was, whether the prisoner might waive a trial by his peers and be tried by the country; and the judges agreed that he could not, for the statute of Magna Charta was in the negative, and the

prosecution was at the King's suit. (*Kelyng's R.*, 59.) Woodeson, in his Lectures (*vol.* 1, 346), says, the same was again resolved, on the arraignment of Lord Audley, in the seventh year of the reign of Charles I, and that the reason was that the mode of trial was not so properly a privilege of the nobility as part of the indispensable law of the land, like the trial of commoners by commoners, enacted, or rather declared, by Magna Charta. In 3 *Inst.*, 30, the doctrine is stated that "a nobleman cannot waive his trial by his peers and put himself upon the trial of the country, that is, of twelve freeholders; for the statute of Magna Charta is that he must be tried *per pares*, and so it was resolved in Lord Dacre's case."

It is unnecessary to pursue this discussion further; and it remains only to add, as the result of the foregoing views, that in the opinion of the court the judgment below should be reversed and a new trial ordered.

Judgment reversed and new trial ordered.