## STATE *v.* POWERS.

INCOMPETENCY OF JUROR, DISCOVERED AFTER CONVICTION.—The prisoner's counsel discovered, after conviction in a capital case, that one of the jurors, some years before, had been convicted of a crime involving moral turpitude; *Held,* no ground for a new trial.

APPEAL from Multnomah County. The case is stated in the opinion.

*Bellinger & Gearin,* for appellant.

*John F. Caples and M. F. Mulkey,* for respondent.

By the Court, WALDO, J.:

The appellant was indicted by the grand jury of Multnomah county, for the murder of Benjamin Cornelius, in the city of Portland on the evening of the fourth of July, 1881. He was tried and found guilty of murder in the first degree, and sentenced to death. A motion for a new trial was overruled, which is the error chiefly relied upon here. The only error alleged to have occurred at the trial, that calls for consideration, was the ruling out of the declarations of the appellant to the witness Imbrie of the purpose of his, the prisoner's, visit to Morrison street wharf on the morning of the day of the homicide. The prosecution proved by

Miss Tilly Cornelius that the prisoner said to her, in connection with other declarations, some time in October, 1880, that on the fourth day of next July he would give her a chance to go to the funeral of some one else; and in May, 1881, he told Oliver Hinman that on the fourth day of next July, he, the prisoner, would have a new lease of life.

In *Benedict* v. *The State*, 14 Wis., 425, Dixon, C. J., says: "Experience demonstrates that the minds of many persons are so constituted that when intent upon the commission of a crime, secrecy becomes impossible, and they cannot refrain from giving vent to feelings of revenge or malicious satisfaction at the anticipated occurrence, and that they often utter threats and make mysterious and blind allusions to their objects and purposes, or boast of what they will do." The prosecution offered these declarations "as a dark hint thrown from a mind that already felt the shadow of the coming tragedy." The defense construed this testimony as evidence tending to show that the prisoner designed to kill Cornelius on that day, and offered to prove that on the morning of the fourth of July, 1881, the prisoner went to the foot of Morrison street with the intention of leaving the city by boat for St. Helens. The court allowed the visit to the wharf to be proved by the witness Imbrie, but ruled out what the prisoner said to the witness, on their way from the wharf, of the object of his visit to the wharf. This ruling was correct, conceding that the declaration would have been admissible had they been made at the wharf.

But the relevancy of the testimony of Tilly Cornelius and Oliver Hinman lies in its tendency to show a murderous purpose, generally, against the deceased. Had the killing taken place on any other day than the 4th, these declarations would still have been admissible, like the declaration of the

prisoner to Tilly, in September, 1880, that he would kill her father that night. Neither the fact of the declarations, nor the malice they are supposed to imply, is controverted by the evidence offered for the defense. The point, as argued on the part of the prisoner, is to show that the pris oner did not intend to kill Cornelius on that day—not that there had been a change of intention, generally, or any abatement of malice. There is some doubt of the relevancy of the transaction of the visit to the wharf in any view. (*Hunt* v. *Roglance*, 11 Cush., 117; *Blight* v. *Ashley*, Pet. C. C., 20; *Jones* v. *The State*, 13 Tex., 176.)

The newly discovered evidence set out in the affidavits of Hawks, Hare, and Courtney Meek, affords no ground for a new trial. Hawks is a resident of San Francisco, and without the jurisdiction of the court. Hare's reputation for truth has been impeached by counter affidavits, and Courtney Meek was a witness at the trial. No good reason is given why he did not then testify to the matter now found in his affidavit.

After the verdict was rendered, the prisoner discovered that one of the petit jurors, R. A. Sutherland, had been convicted of a crime involving moral turpitude, and therefore was not qualified to sit in the case. The disqualification of this juror was greatly and chiefly relied on to reverse the judgment of the circuit court. Cases from Wisconsin, Michigan, Illinois, Vermont, *State* v. *Babcock*, 1 Conn., 401, and *Cancerni* v. *The People*, 18 N. Y., 134, were cited for the appellant. *Schumaker* v. *The State*, 5 Wis., 324, was where, after a conviction for manslaughter, a motion for a new trial was made on account of the alienage of one of the jurors, not discovered until after verdict. The motion was granted with some hesitation, and without much examination of authorities. The doctrine laid down is that found

in *Guykowski* v. *The People*, 1 Scam.; *State* v. *Babcock*, 1 Conn., and cases from Vermont. These authorities are adversely commented on by Gray, C. J., in *Wassum* v. *Feeney*, 121 Mass., 117.

In *State* v. *Vogel*, 22 Wis.,—a case of arson—there is a dictum, unsupported, that in capital cases the prisoner is not held to waive anything. *Cancerni* v. *The People* was cited in the argument of counsel. *Hill* v. *The People*, 16 Michigan, 351, was a capital case, in which the verdict was set aside and a new trial granted, because one of the jurors was an alien, and this fact was unknown to the defendant or his counsel, until after the rendition of the verdict. The question in fact discussed in this case was whether the defendant in a criminal prosecution could consent to a trial, and by such consent bind himself to abide by the verdict of a jury of eleven men.

It was held in *Cancerni* v. *The People*, 18 N. Y., 128, that a verdict by such a jury was a nullity. In *State* v. *Kaufman*, 51 Iowa, the same question came up, and was decided the other way. The objection appeared on the face of the record. But in *Hill* v. *The People* the court heard parol proof to contradict what the record probably showed, as it shows in this case, that the jury were all good and lawful men. Now, after a record has been made up in a suit *inter partes* it is a principle of the common law that no plea shall be afterward admitted to impugn the verity of the record, and there may be ground for holding that the principle applies to the case where a defendant fails to take exception to an objectionable juror, and the case goes to verdict. (See *Boyington* v. *The State*, 2 Port., 100; *Hall* v. *The State*, 4 Gr., (Iowa), 73.)

But we may confidently rest the case on authority. In *Hollingsworth* v. *Duane*, C. C., 152, it is said to be against

the policy of the law to allow such an objection to be taken after verdict. "I should have as soon expected to have heard an argument to prove that the verdict ought to have been set aside because the plaintiff was an alien enemy, or labored under some other disqualification, which ought to have been pleaded in abatement, as to hear it maintained that it was competent, after verdict, to inquire whether a juror was an alien, an infant or a servant; of affinity to the party; interested; infamous; favorable. Upon the record no exception appears." (Id., 153.) This was a civil case, but the same principle governs in criminal cases. (*Gillespie·*v. *The State*, 8 Yerg., 509.)

In *Wassum* v. *Feeney*, 121 Mass., 94, one of the jurors who tried the case was but nineteen years of age. Upon a motion to set aside the verdict on this ground, Gray, C. J., says: "When a party has had an opportunity of challenge, no disqualification of a juror entitles him to a new trial after verdict. This convenient and necessary rule has been applied by this court, not only to a juror disqualified by interest or relationship, (*Jeffries* v. *Randall*, 14 Mass., 205; *Woodward* v. *Dean*, 113 Mass., 297,) but, even in a capital case, to a juror who was not of the county or vicinage, as required by the constitution. (Declaration of Rights, art. 13, Anon., cited by Jackson, J., in 1 Pick., 41, 42.)

The same rule has been applied by other courts to disqualification by reason of alienage, although not in fact known until after verdict. (*Hollingsworth* v. *Duane*, 4 Dall., 353, S. C., Wall. C. C., 147; *State* v. *Quarrel*, 2 Bay., 150; *Presbury* v. *Commonwealth*, 9 Dana, 203; *The King* v. *Sutton*, 8 B. & C., 417; S. C. *nom.*, *The King* v. *Despard*, 2 Man. & Ry., 406.) In the case of the *Chelsea Water Works Co.*, 10 Exch., 731, Baron Parke said: "In the case of a trial by a jury *de medietate linguœ*, which by

the 47th section of the jury act is expressly reserved to an alien, he may not know whether proper persons are on the jury; yet if he was found guilty and sentenced to death, the verdict would not be set aside because he was tried by improper persons, for he ought to have challenged them."

In *United States* v. *Baker*, 3 Benedict, 68, a motion was made to set aside the verdict in a criminal case, because after verdict it was found that one of the jurors was deaf. In denying the motion, Blatchford, J., said: "On principle, as well as on authority, nothing that is a cause of challenge to a juror before verdict, can be used to set aside a verdict, as for a mistake, even though the cause of challenge was unknown to the party, when the jury were sworn."

*McClure* v. *The State*, 1 Yerg., 206, 218, was a capital case, in which it was discovered, after verdict, that one of the jurors who found the verdict was an atheist. This was an objection to the moral capacity of the juror. Mr. Justice Catron, afterward of the supreme court of the United States, while of opinion that this was not a ground for challenge under the laws of Tennessee, went on to say: "The objection comes too late. If a juror is not a good and lawful man, can he be challenged after he is sworn? The ancient and well settled English authorities are, that you can not challenge a juror after he has been sworn, unless it be for cause arising afterwards. We adopted the right of trial by jury as we found it at the time we declared our independence in 1776; the English common law and the statutes passed before the 4th Jac. 1, we adopted. By these statutes and by the common law, we are now bound in the administration of justice in this state.

"If the rules of decision were well settled, and we are bound by them, why look into doubtful decisions of sister states. Nothing has been better settled for centuries in

England, than that after a juror is once sworn, he cannot be challenged for any pre-existing cause. 1 Inst., 158 a; 3 Vin. Abr. E., 11, p. 764; Yelverton Rep., 240; 2 Hawk. Chapter 43, premises it to be a settled point of practice 'that no juror can be challenged, either by the king or prisoner, without consent, after he has been sworn, unless it be for some cause which happened since he was sworn.' It would be most dangerous to pursue a different practice. It is admitted that if the defendant had knowledge of the objection before the juror was sworn, then he could not after be permitted to take advantage of it. Of this want of knowledge what evidence has the court? The affidavit of a convicted felon—proof always to be had, when deemed necessary. It is said the want of knowledge is an exception to the general rule. This is a mistake. The case of Watson in Yelverton was this very case, where the exception was discovered after the jury was sworn, and the court declared it within the general rule."

In *State* v. *Greenwood*, Hayward (N. C.), 141, Hayward, J., in an *obiter dictum*, said: "Were a defendant allowed to take his challenge to the jurors after the trial, he never would do it before, but would always rather depend upon moving it to the court after the trial—for if he should be acquitted he would say nothing about the disqualification of the juror, and if convicted, he could avoid judgment by offering his objection. This in fact would be placing him in a situation totally exempt from danger and from punishment, so long as he could get a juror sworn against whom he could offer any legal objection, and would give him the additional advantage of several chances for his acquittal."

*State* v. *Davis*, 80 N. C., 412, was·a conviction for burglary, and a motion for a new trial because the defendants had discovered since the verdict that one of the jurors was

an atheist. The court say: "Their objection to the juror comes too late. It is well settled by English authorities, sanctioned by the uniform practice of centuries, and by numerous decisions in this state, that no juror can be challenged by the defendant, without consent, after he has been sworn, unless it be for some cause which has happened since he was sworn. The challenge *propter defectum* should be made as the juror is brought to the book to be sworn. If not then made the defendant waives his challenge. * * * And in conformity with this rule of practice is the ancient formula used by clerks, both in England and in this country, in their address to prisoners before the jurors are drawn— "those men that you shall have called and personally appear are to pass between our sovereign (or the state) and you upon your trial of life and death; if, therefore, you will challenge them or any of them, your time is to speak to them as they come to the book to be sworn, and before they are sworn."

*George* v. *The State*, 39 Miss., 570, 590, was a capital case in which it was found after verdict that one of the jurors was an alien. A motion for a new trial for this cause was denied. (*State* v. *Quarrel*, 2 Bay, 150, [2 Am. Dec., 637,] *State* v. *Fisher*, 2 Nott & McCord, 261, and *Hollingsworth* v. *Duane*, 4 Dall., 353, are cited.) It follows that though what the court said in *State* v. *McDonald*, 8 Or., 118, may have been a *dictum*, as claimed by defendant's counsel, it is, nevertheless, good law.

The last point to be considered is the objection to the sufficiency of the evidence to support the verdict. In *State* v. *Wilson*, 6 Or., 428, the court seem hardly to have considered this a ground of error on appeal. It is not necessary, however, to express any opinion on this point, since it must be admitted that the jury were the sole judges of the

weight of evidence, and that there is testimony to support the verdict, which it is clear, therefore, we cannot review. (*State* v. *Music*, 71 Mo., 401: *State* v. *Cook*, 58 Mo., 548; *Miller* v. *Petrie*, 40 Mich., 657; *Dickerson* v. *The State*, 48 Wis., 288.) The judgment must be affirmed.

Judgment affirmed.