STATE v. SIDNEY B. HOLT.

*Trial by Jury, cannot be waived in criminal cases.*

A jury trial cannot be waived in a criminal action; hence where the facts were agreed upon by the state and the accused and submitted to the judge for his decision, *it was held*, that such a procedure is not warranted by the law.

(*State* v. *Stewart,* 89 N. C., 563 ; *State* v. *Moss,* 2 Jones, 66, cited and approved)

INDICTMENT for cruelty to animals, tried at January Term, 1884, of WAKE Superior Court, before *Shepherd, J.*

The defence is former conviction, the plea being set out in the record. And then comes the following: "The court heard said plea upon the following facts agreed between the state and the defendant, to-wit: that the defendant at June term, 1883, of said court, came into court in his own proper person and entered his plea of guilty to a bill of indictment then pending, to-wit, an indictment for cruelty to certain domestic animals described as 'game cocks'; that it was stated to His Honor, the then presiding judge, that certain other bills were then under consideration by the grand jury, for cruelty to domestic animals; that the said bills are the same as that now pending against this defendant, and no other bills; that the counsel for the state stated to the court that there were other bills pending before the grand jury, and that the cock-fight had continued for three days and the judgment should be heavier on that account, and the judge

remarked, 'let every tub stand on its own bottom,' and fined the defendant in that case (at June term, 1883) twenty-five dollars, and held the defendant to answer in the other cases." Signed by the counsel for the defendant and the solicitor for the state. "That the various bills including this one were for fighting on different days, but in the same main." Signed by defendant's counsel and the solicitor.

His Honor overruled the plea of former conviction. Thereupon the defendant pleaded guilty, and from the judgment imposing a fine of twenty-five dollars the defendant appealed.

*Attorney-General,* for the state.
*Messrs. T. P. Devereux* and *J. E. Bledsoe,* for defendant.

MERRIMON, J.   The defendant indicted under THE CODE, §§ 2482 and 2483, prohibiting "cruelty to animals." He pleaded "former conviction." The case was called for trial. It does not appear that the defendant waived or undertook to waive his right to a trial by jury, but the case states that it was "agreed between the state and the defendant" that a statement of facts submitted to the court were the facts of the case. This statement was not submitted in the shape of a special verdict, but it seems that it was intended to be so treated.

The court, upon, consideration of the facts thus submitted, found the issue raised by the plea against the defendant, gave judgment for the state, and the defendant appealed to this court.

The constitution (Art. I, §13) provides that "no person shall be convicted of any crime *but by the unanimous verdict of a jury* of good and lawful men in open court. The legislature may, however, provide other means of trial for petty misdemeanors with the right of appeal."

The substance of this provision is taken from *Magna Charta.* For centuries the right of trial by jury in criminal cases has been regarded by the English people as one of their chief and sure defenses against abitrary power. The colonists in this

country brought that right to this, from the parent country, and it has become a part of the birthright of every free man. The people of the American Union, and especially the people of this state, have, ever since their existence as a people, regarded and treated this provision in their organic law as an essential feature in free government, and as one of the fundamental bulwarks of their civil and political liberty. They have always given it a place in that part of the constitution denominated, because of its superior importance, The Declaration of Rights. They guard it with jealous care and unceasing solicitude, and any open infraction of it would certainly give rise to general alarm and deep discontent, resulting sooner or later in the reassertion of constitutional supremacy or flagrant civil strife.

This solicitude of the people is not unnatural, unnecessary or unworthy. They show but a reasonable appreciation of a provision in government of the highest moment to them. The just purpose and excellence of trial by jury, especially in criminal cases, are not imaginary and whimsical, or the outgrowth of popular ignorance and persistent clamor. While it is not perfect as a method of trial, has its imperfections, and is sometimes perverted and prostituted, nevertheless, the practical experience of one of the freest and most enlightened nations of the earth for centuries and of this country during all the time of its existence, the sanction of it by the wisest statesmen and jurists in different ages, as well as common sense, have proved its inestimable value as the best method of trial, in criminal cases especially, and the necessity for it as a constituent provision in any system of free government. Judge STORY, in his Commentaries on the Constitution, thus points out its great purpose and the ends it subserves: Section 1780. "The great object of a trial by jury in criminal cases is to guard against a spirit of oppression and tyranny on the part of rulers, and against a spirit of violence and vindictiveness on the part of the people. Indeed, it is often more important to guard against the latter than the former. The sympathies of all mankind are enlisted against the revenge and

fury of a single despot, and every attempt will be made to screen his victims. But how difficult is it to escape from the vengeance of an indignant people, roused to hatred by unfounded calumnies, or stimulated to cruelty by bitter political enmities, or unmeasured jealousies? The appeal for safety can under such circumstances scarcely be made by innocence in any other manner than by the severe control of courts of justice, and by the firm and impartial verdict of a jury sworn to do right, and guided solely by legal evidence and a sense of duty. In such a course there is a double security against the prejudices of judges who may partake of the wishes and opinions of the government, and against the passions of the multitude who may demand this victim with their clamorous precipitancy. So long, indeed, as this palladium remains sacred and inviolable, the liberties of a free government cannot wholly fall. But to give it real efficiency, it must be preserved in its purity and dignity, and not with a view to slight inconveniences, or imaginary burthens, be put into the hands of those who are incapable of estimating its worth, or are too inert, or too ignorant, or too imbecile to wield its potent arm."

It is scarcely to be supposed that in this country any serious danger could arise to the citizen or to the country generally from an open or flagrant violation of the fundamental right in question. Occasional instances have occurred in times of public danger and trouble wherein the citizen was deprived of his right to a trial by jury, and his life was unlawfully sacrificed, but such cases have been few, and have met with very general condemnation.

A greater danger arises from practices and precedents that insidiously gain a foothold and power in courts of justice, by inadvertence and lack of due consideration. The great importance of trial by jury is sometimes lost sight of, even in courts of justice, in the disposition of petty misdemeanors, cases of no great moment, and what are called "plain cases." In the economy of time, the hurry of business, lack of attention, hasty

consideration, irregular and unwarranted methods of trial are adopted, allowed, tolerated, and thus vicious practices spring up, creating sources of danger to constitutional right.

It is the province and the duty of the courts to keep strict watch over and protect fundamental rights, in all matters that come before them. Those who administer the law should never forget that decided cases make precedents, precedents oftentimes of little moment in themselves, but which, in their accumulated power may, in some emergency, overturn principle and subvert the rights of many people.

Mr. Justice BACKSTONE, in commenting upon the great excellence of trial by jury, thus points out the evil to which we advert: "So that the liberties of England cannot but subsist so long as this palladium remains sacred and inviolable, not only from all open attacks (which none will be so hardy as to make), but also from all secret machinations, which may sap and undermine it by introducing new arbitrary methods of trial by justices of the peace, commissioners of the revenue, and courts of conscience. And however convenient these may appear at first (as doubtless all arbitrary powers, well executed, are the most *convenient*), yet let it be again remembered that delays and little inconveniences in the form of justice, are the price that all free nations must pay for their liberty in more substantial matters; that these inroads upon the sacred bulwark of the nation are fundamentally opposite to the spirit of our constitution, and that, though begun in trifles, the precedents may gradually increase and spread, to the utter disuse of juries, in questions of the most momentous concern."

These observations are not made, so much with reference to this particular case, as for counteracting what seems to be a tendency in this state to ignore, sometime in matter of moment, trial by jury, in cases where, under the constitution a trial must be had in that way. The case of *State* v. *Stewart*, 89 N. C., 563, was like this in its material features, except, that in that case, a trial by jury was expressly waived, and the court was requested

48

to find and did find the facts. Cooley, on Const. Law, 239; *Cancemi* v. *People*, 18 N. Y., 128.

There was not the remotest purpose in this case, we are sure, to infringe the right of trial by jury in a criminal action, but for convenience sake and to save time (because the facts were not disputed), the facts of the case were agreed upon by the state and the defendant, and submitted to the judge, instead of letting a jury hear the evidence, and render a verdict upon the issue, or find a special verdict.

In our judgment, this was not only irregular, but wholly without the sanction of law. There is no statute that authorizes such procedure, and the constitution forbids it. "No person shall be convicted of any crime but by the unanimous verdict of a jury of good and lawful men in open court." No jury was empaneled to try the issue; there was no verdict of a jury; there was no conviction! The judgment of the court had nothing to warrant it, and there was nothing upon which it could properly rest.

The defendant could not consent to a conviction by the court. It had no authority to try the issue of fact raised by the pleadings. The defendant did not plead guilty; he did not enter the plea of *nolo contendere*, or submit "; he pleaded *antrefois convict*, and a jury must try the issue raised by that plea. *State* v. *Stewart, supra; State* v. *Moss,* 2 Jones, 66; 1 Bish. Cr. Pl., §759, and cases there cited; *Cancemi* v. *People,* 18 N. Y., 128.

The legislature has not provided a means for the trial of cases like this, different from the ordinary method provided by law.

The court erred in passing upon the facts agreed upon and submitted to it without the finding of a jury, and for such error the judgment must be reversed and the court proceed to dispose of the case according to law.

Error.                                        Reversed.