THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* MORRIS SPIEGEL, Appellant.

*Incompetent evidence — when the admission of is no ground for reversal — indictment for presenting a fraudulent claim of loss under a fire insurance policy — competency of a juror — irresponsive testimony — motion to strike out all of testimony partially competent — judge's charge.*

An exception to inadmissible evidence is not necessary in order that a court may reverse a judgment when, in its opinion, injustice has been done, but the mere fact that during the progress of a long trial, improper or incompetent evidence may have been admitted, to which the attention of the trial judge was called, affords no reason for disturbing the judgment.

A prisoner has no constitutional right to be convicted by evidence that shall be competent in every particular, and where upon his trial evidence was admitted that might have been, but was not, objected to by his counsel, such admission does not necessarily form a ground for the reversal of a judgment of conviction.

A person was charged with the crime of fraudulently and knowingly presenting a false and fraudulent claim for the payment of an alleged loss under a fire insurance policy. The indictment stated that the defendant presented a claim for the payment of a loss whereby it was claimed by the defendant that he had sustained damage by fire to the extent of $70,221.79, and that the insurance company was justly indebted to him by reason of said loss, and its contract of

insurance, in the sum of $7,000, whereas, in fact, the defendant's loss was not $70,221.79, and the company was not indebted to him in the sum of $7,000.

*Held,* that such facts, if established, proved the presentation of a false and fraudulent claim for the payment of a loss upon a contract of insurance, and that the indictment complied with the requirements of the statute. (Penal Code, § 579.)

The determination of the court in regard to the general incompetency of a juror because of his possible unfamiliarity with the language and of the situation of his business, should not be lightly interfered with, and such determination does not justify the reversal of a judgment of conviction unless the juror was clearly shown to be competent.

Where an answer to a question upon a trial is irresponsive and the testimony is incompetent, the proper method of raising the question is to move to strike out the evidence upon these grounds, but merely asking the court to strike out evidence as irresponsive is asking it simply to exercise its discretion in regard to evidence in respect to which no question of competency is urged, but only that it should not appear upon the record in response to the question asked. The rule in respect to evidence of this kind is that in order that error shall be predicated of a denial of a motion to strike it out, the ground must be both that it is irresponsive and incompetent.

When a motion is made to strike out all of an answer, a portion of which is competent, the granting of the motion is in the discretion of the court.

Upon the trial of a person under an indictment the court charged : " This case is such that you may pass upon it, in determining this defendant's guilt, without even considering the testimony of Blais if you wish to. I charge you that there is sufficient evidence in this case, apart from anything Mr. Blais has said, upon which you can find a verdict of guilty if you are convinced beyond a reasonable doubt from that other evidence."

*Held,* that such charge was proper, and that thereby the court left to the jury for their consideration every element in respect to the guilt of the defendant.

It is not error for a court to refuse to charge a request for which there is no foundation in the evidence.

A statement annexed to a claim for loss under a fire insurance policy, to the effect that the schedules annexed to the claim stated the value of the merchandise damaged by the fire, and that in estimating the value thereof the value of salvage in various instances was not considered, as much of the goods damaged and saved had for the insured no commercial value, and that their proper value should be ascertained by appraisement, does not change the character of the claim for loss, and it does not become thereby simply a request for the ascertainment of loss by the appointment of appraisers.

Upon the trial of a person under an indictment, prior to the commencement of the judge's charge, written requests were handed up by the counsel for the defendant as to the subjects upon which the defendant requested the court to charge the jury. During the progress of the charge these requests were ruled upon, either charged as requested or qualified or refused. After all this had been done, and the jury were about to retire, the counsel for the defendant

said: "In connection with your remarks on the evidence I request as to the testimony of McKenna—" The court interrupted the counsel, declining to present any more requests, to which ruling the counsel for the defendant seemingly assented, taking no exception.

*Held*, that the record did not show any ground for reversal, nor that the defendant had been injured by the ruling of the court.

APPEAL by the defendant, Morris Spiegel, from a judgment of the Supreme Court, rendered at a Court of Oyer and Terminer held in and for the city and county of New York on the 27th day of December, 1892, convicting the defendant of the crime of presenting and causing to be presented a false and fraudulent claim for the payment of a loss upon a contract of insurance, knowing it to be such.

*C. Daniels*, for the appellant.

*H. B. B. Stapler*, for the respondent.

VAN BRUNT, P. J.:

The statute under which the defendant is indicted (Penal Code, § 579) is as follows: "A person who, knowing it to be such, either presents or causes to be presented a false or fraudulent claim, or any proof in support of such a claim, for the payment of a loss upon a contract of insurance * * * is punishable by imprisonment for not more than five years, or by a fine of not more than $500, or by both such fine and imprisonment."

The indictment against the defendant, after alleging that the Insurance Company of North America was a corporation at the times in the indictment mentioned lawfully doing business in the city, county and State of New York as an insurer, and that Morris Spiegel, the defendant, was at said times doing business in and by the style of A. Blum, Jr.'s, Sons, and that said company had duly insured said Spiegel to the amount of $7,000 against loss or damage by fire upon certain goods, chattels and merchandise belonging to him, further alleged that said Spiegel fraudulently and knowingly did feloniously present and cause to be presented to said Insurance Company of North America a certain false and fraudulent claim for the payment of a loss upon said contract of insurance wherein and whereby it was claimed by said Spiegel that a loss had been sustained by him by reason of said fire and the destruction and

# 164 PEOPLE v. SPIEGEL.

damage occasioned thereby to the goods, chattels and merchandise contained in said building at the time of said fire, and so insured, to the extent of $70,221.79; and that said Insurance Company of North America was then justly indebted to said Spiegel by reason of said loss, damage and contract of insurance in the sum of $7,000, which said claim was then and there false and fraudulent in this, to wit, that a loss had not been sustained by said Spiegel by reason of said fire and the destruction and damage occasioned thereby to the goods, chattels and merchandise contained in said building at the time of said fire, and so insured as aforesaid, to the extent of $70,221.79, and said insurance company was not then justly indebted to said Spiegel by reason of said loss, damage and contract of insurance in the sum of $7,000, all of which he, said Spiegel, then and there well knew, against the form of the statute in such case made and provided, and against the peace of the People of the State of New York and their dignity. To this indictment the defendant pleaded not guilty, and upon the trial before the Court of Oyer and Terminer was convicted by the jury; and from the judgment thereupon entered this appeal is taken.

To attempt a statement of the evidence offered, or of the facts claimed to have been established upon this trial, would be impossible within the limits within which this opinion should be kept; and we will content ourselves with discussing as briefly as may be those points raised upon the part of the appellant which seem to call for discussion and consideration.

In the brief submitted upon the argument of this appeal a very large number of errors in the admission of evidence are brought to the attention of the court; but in almost every instance no exception was taken to the admission of the evidence, and although such an exception is not necessary in order that the court may reverse a judgment where in its opinion injustice has been done, the mere fact that during the progress of a long trial improper or incompetent evidence may have been admitted, to which the attention of the trial judge has not been called, affords no reason for disturbing the judgment. We shall, therefore, proceed to discuss only those questions which were properly raised, or which seem to be of sufficient dignity to call for consideration.

The first objection raised is that the facts stated in the indictment are not sufficient to constitute a crime.

It is urged that the indictment shows that the Insurance Company of North America had made a policy of insurance whereby it insured the defendant to the amount of $7,000 against loss or damage by fire, and that at the time when the appellant presented his proof of loss the contract of insurance was in full force and effect, and that while said contract was in full force and effect the fire occurred by which certain loss and damage were occasioned to the goods insured; that in order that the indictment should properly charge the presentation by the defendant of a false and fraudulent claim under the statute, it ought to have alleged that a loss had not been sustained by the defendant by reason of said fire and the destruction and damage occasioned thereby to the property insured to the extent of $7,000; and that it was insufficient to allege that the defendant's claim against the insurance company was false and fraudulent because his loss was not $70,221.79; that it was necessary only that his loss should be $7,000 to make his claim an honest and just one. This criticism upon the indictment seems to have been first raised upon this appeal. But that it has no foundation is seen upon a very brief consideration of the allegations of the indictment. The crime charged is fraudulently and knowingly presenting a false and fraudulent claim for the payment of a loss under his contract of insurance by the defendant. The allegation in the indictment is that the defendant presented a claim for the payment of a loss whereby it was claimed by the defendant that he had sustained damage by fire to the extent of $70,221.79, and that the company was justly indebted to him by reason of said loss and contract of insurance in the sum of $7,000. The indictment then alleges that the appellant's loss was not $70,221.79, and that the company was not indebted to him in the sum of $7,000, which facts, if established, proved the presentation of a false and fraudulent claim for the payment of a loss upon a contract of insurance, which was a compliance with the requirements of the statute. The gravamen of the charge is that the appellant, knowing that the insurance company against whom he presented his claim was not indebted to him in the amount claimed, falsely and fraudulently magnified his loss and claimed the whole amount insured. It appears from the evidence in this

FIRST DEPARTMENT, JANUARY TERM, 1894.    [Vol. 75.

case that under the contract of insurance, in order that the Insurance Company of North America should become indebted to the defendant in the total amount of its policy, which was $7,000, it was necessary that the loss which defendant sustained by the fire should be $35,000, there being other insurances on the property to the amount of $28,000, and by the terms of his contract of insurance the Insurance Company of North America was not to be liable for a greater proportion of any loss than the amount insured should bear to the whole insurance, whether valid or not, covering such property. The learned trial judge charged the jury that this was not a case of extravagant estimate; that the defendant could not be found guilty under the indictments if he had simply gone beyond even the highest valuation of the property which he might possibly have made, if it was merely an extravagant estimate; that there must be back of it and under it the intent to cheat and defraud, or, in other words, he must have passed the limit where an honest though extravagant estimate ends into the region where fraud itself lurks and lives; and further, that it was not sufficient, in order to convict defendant, that the jury should find that he had not sustained a loss of $72,000 or thereabouts, but that not having sustained a loss of $35,000, the amount of his insurance, he knowingly, and with the fraudulent intention of inducing the insurance companies to pay over the amount insured, magnified his loss far in excess of the amount of such insurance. If the jury found these facts the charge contained in the indictment, of the presentation to the Insurance Company of North America of a false and fraudulent claim, would be established.

It is also alleged that the court erred in rejecting one of the jurors who had been summoned upon this trial, upon the ground that the juror showed himself to be both competent and impartial, and that there was no evidence which could satisfy the court in the exercise of its sound discretion, that he could not try the case impartially and without prejudice to the substantial rights of the public. The juror does not seem to have been excluded upon the ground of actual bias, but upon the ground of his general incompetency, and the court seems to have held, from what appeared before it upon the examination of this juror, that he was not competent to serve, because of his possible unfamiliarity with the language, and because

the situation of his business was such that his attention would be distracted, and it found that the juror was not what could be called a competent juror in such a case as the one at bar. Findings of the court of this kind should not be lightly interfered with. The question as to the capacity of a juror of foreign nationality to understand the language in which court proceedings are conducted, his general intelligence, his power of comprehending the evidence as offered by the witnesses, and many other points, must necessarily be considered by the court in determining the general competency of a juror. It is impossible to photograph upon the record the hesitation, the evident want of comprehension, the manner and the precise character of the answers of the juror, and these all, necessarily, have great weight with the court in determining the question as to the competency of the juror. It is evident upon reading the examination of the juror in question that he did not comprehend all the questions put to him, and how far this want of comprehension existed it is impossible for us to tell. We do not think that the juror was so clearly shown to be competent that we should reverse the conviction upon such a ground.

The defendant at the time of the fire in question, and for some time previous thereto, had been engaged in the city of New York in the business of manufacturing and importing wines and liquors, and it was for alleged damage to his stock in trade at his place of business, 101 and 103 Broad street in the city of New York, caused by a fire occurring on the 16th of December, 1891, that the alleged claim against the Insurance Company of North America was presented. It was urged upon the part of the People, and testimony tending to show that fact was offered, that after the occurrence of the fire, by which the loss was comparatively small, the defendant commenced doctoring his stock by the addition of bitter almonds shown to have been recently purchased by him, and in other ways, for the purpose of making his loss appear much greater than it really was. Among the witnesses examined was one Vincenot, a distiller and compounder of liquors, who was examined as an expert, and who testified to testing certain samples taken from the stock of the defendant. He was asked upon cross-examination the following question : " Q. I understand that the other side say that there was a large amount of bitter almond in the wine. Was there any larger

amount of bitter almond, or as large an amount of bitter almond, that you could tell by appearance ? "

The witness answered : " I have seen it in several wines quite uniform — the quality. At first when I tasted the wine I thought it was an accident because there was pretty much in it.; and then when I tasted the others I found it was the same as the first, and I thought it was probably an accident from the fire ; but then uniformity in all the tests had appeared to me as if it was purposely put." This witness was examined in French, and as soon as the answer was interpreted the counsel for the defendant objected to it on the ground that it was not an answer to his question, and moved to strike it out upon the ground that it was irresponsive, which motion was denied and an exception taken. The sole ground of the objection was that it was irresponsive, not that the evidence was incompetent and improper. It is undoubtedly true that where an answer is irresponsive and the testimony is incompetent, the method of raising the question is to move to strike out the evidence upon these grounds. But merely asking the court to strike out evidence as irresponsive is asking the court to exercise its discretion simply upon evidence in respect to which no question of competency is urged, but only that it should not appear upon the record in response to the question asked. The rule in respect to evidence of this kind is that in order that error shall be predicated of a denial of a motion to strike out, the ground must be both that it is irresponsive and incompetent, thus placing the objection upon the same ground as if a proper question had been asked to bring out the evidence and it had been properly objected to.

And further, the motion was to strike out all the answer. It is clear that a portion of the answer was competent.

The witness as an expert was stating what he found, and it was only his conclusions from what he found that perhaps might be the subject of criticism. The motion was not limited to this portion of the answer, but covered the whole, and, therefore, the granting of the motion was within the discretion of the court, there being some portions of the answer which were competent evidence.

Another point urged is the claim that the court erred in its charge to the jury in respect to the witness Blais, who was examined upon the trial. This witness, who gave testimony which, if true, was

highly detrimental to the defendant, was shown to have been of more than doubtful character ; and it was claimed upon the part of the appellant that all of the material portions of his testimony were false and induced by reason of the promise of immunity upon the part of the district attorney, and that no reliance should be placed upon it.

The learned court, in the course of its instructions to the jury, charged, among other things, as follows : " This case is such that you may pass upon it, in determining this defendant's guilt, without even considering the testimony of Blais if you wish to. I charge you that there is sufficient evidence in this case, apart from anything Mr. Blais has said, upon which you can find a verdict of guilty if you are convinced beyond a reasonable doubt from that other evidence." To this direction an exception was taken. It is urged that whether there was sufficient evidence without the testimony of Blais to convict the defendant was not for the court, but for the jury, to decide. And in support of this proposition (which hardly needs the citation of authorities) certain authorities are cited, notably the case of *McKenna* v. *People* (81 N. Y. 360). In that case the court charged the jury that if they believed the evidence offered by the People to be true, they would be justified in finding the prisoner guilty, language very different from that used in the case at bar. By the charge now under consideration the court left to the jury for their consideration every element in respect to the guilt of the defendant. All that the instruction to the jury meant was that if Blais' testimony was stricken from the case he would still submit the question of defendant's guilt to them just the same, and would not instruct the jury that there was not sufficient evidence to convict, and advise them to acquit, which advice they would be bound to follow. In other words, the evidence of Blais having been assailed, the court instructed the jury that if they were convinced beyond a reasonable doubt of the guilt of the defendant by the other evidence in the case, they were justified in finding a conviction. Suppose the court charges a jury in any criminal case, and do not they so charge in every case ? that if the jury are satisfied from the evidence beyond a reasonable doubt of the defendant's guilt they may convict him, and what more is there in the charge in question ?

The court in effect said : Strike out Blais' evidence, and if without his evidence you are convinced beyond a reasonable doubt of the guilt of the defendant, you may convict. And nothing else. There was no direction to convict, no statement that if they believed the evidence upon the part of the People they must convict, but a simple instruction that if they were convinced beyond a reasonable doubt of the guilt of the defendant, they might convict, no matter what opinion they might have about Blais' testimony.

The next question presented is an error claimed to arise from a request to charge. The defendant's counsel asked the court to charge that if the defendant, through his agents at the time of presenting the proofs of loss, stated to the insurance company, or its agent, that he did not intend to claim the payment of any specific sum of money, and only asked for an estimate of the loss by appraisers, to be hereafter appointed or otherwise, then he must be acquitted. The court refused so to charge, and an exception was taken.

We have examined the case in vain to find any foundation for the request under consideration. We find no evidence that the defendant, through his agent, at the time of presenting the proofs of loss, stated anything to the insurance company or its agents in reference to his claim, except that which was included in his proofs of loss.

Our attention is called to certain statements made by the defendant to one Walton, a fire adjuster. But Walton was an agent of the defendant, and it is clear upon examining Walton's whole testimony in this respect that it does not support the contention that the proofs of loss were not intended to present a claim. He testifies to certain conversations he had with defendant after he had got the schedule. He says he asked defendant if it was a correct statement of damage, and the defendant said : " So far as the damages are concerned I can't say precisely, for there would be a large salvage property, but for himself it wouldn't be worth a great deal, but if it were auctioned off it might be worth a great deal more." Walton then told him what he had to say about it when he talked it over, and told him the way to qualify that, was to make an estimate of damages not to defeat the company, and to state that this was an estimate, and that he would not demand this amount, but what he demanded was a fair appraisal; that upon this he wrote out such a statement

and the defendant wrote out one, and the defendant preferred his own. Then the question was put to the witness, " And you understood this to be a suggestion for you to take to the companies as a qualification of any application or *claims ?* " If no claim was presented by the proofs of loss what need was there of qualifications?

The witness answered, " Yes, sir, for I told him. they would not pay the entire loss. And he said ' no.' And I told him to qualify it so as to make the companies understand that his position was such that he could not make an estimate of his loss on goods that were a total loss, and that he should make a claim upon the goods that were damaged by fire, which goods would be of no value to him as merchandise, but which would amount to more possibly if they were put up at auction " — language quite inconsistent with the idea that it was not intended that the proofs of loss should present a claim to the insurance companies.

Reference is made to the testimony of Harris, Halsey and Sterns, representatives of the insurance companies, who called upon the defendant in reference to the loss. But their testimony does not substantiate any such proposition as that Spiegel did not intend his proofs of loss to be a claim. The proofs of loss had been sent on the fifth of January, and these gentlemen called on the defendant on or about the eighth of January, when defendant declined to show his books, saying that he had made no claim whatsoever by his books, or for any goods that were burnt up entirely, or for any damage of that kind, clearly showing that at this time at least the defendant understood that he had made a claim against the insurers. But this point is entirely set at rest by a consideration of the proofs of loss themselves. In these proofs of loss is a claim in the following words : " And the insured claims of the Ins. Co. of North America Insurance Company, by reason of said loss, damage and policy of insurance, the sum of $7,000." Attached to this declaration were schedules claiming to show a loss of over $70,000.

It is sought to avoid the effect of this presentation of proofs of loss by the following statement attached to the proofs of loss, which it would appear was the contribution of the appellant himself : " Morris Spiegel of the firm of A. Blum, Jr.'s, Sons, of city of New York, being duly sworn, says that the annexed schedules state the value and damage of the merchandise damaged by fire in the building 101

FIRST DEPARTMENT, JANUARY TERM, 1894.      · [Vol. 75.

& 103 Broad St. on the 16th of December, 1891. In estimating the damage of the merchandise the value of the salvage in various instances is not considered, as many of the goods damaged and saved have for us no commercial value, as their original condition is changed and their proper value should be ascertained by appraisement." This addendum, which, although printed in the shape of an oath, does not appear ever to have been sworn to, it is claimed, made the presentation of the proofs of loss simply a proposition for appraisement.

The court, in its charge, seems to have presented with great clearness and fairness this question to the jury, charging, at the request of the defendant, that if they believed that the defendant, in presenting the proofs of loss, did not intend thereby to call for the payment of any specific sum of money, but only asked for an ascertainment of the loss by appraisers to be thereafter appointed, or otherwise, then he must be acquitted, thus clearly presenting the precise question to the jury as to whether Spiegel intended these proofs of loss to be a claim against the insurance company or not. It is true that he qualified this request by adding the words, "unless the jury find it to be a part of a fraudulent scheme," this qualification clearly referring to what had already been stated in the charge in regard to the intention with which this appraisement clause was added to the proofs of loss.

There seems to be no doubt upon the whole record that the appellant in presenting these proofs of loss presented them under the provisions of the policy requiring their submission. And that he was making a claim thereon is evidenced by the proofs of loss themselves as distinctly as language can state it. Merely because he says in an addition to the claim that he is uncertain as to the amount of salvage upon some of the articles, does not change the character of the paper. It was a claim under oath stating his damage to be over $70,000, and his claim against this insurance company to be $7,000, whereas, from the evidence, the jury had a right to find that the damage did not exceed $2,000, and his claim against this insurance company was not over $400. It would appear that there was no foundation for the request which was made and refused, and consequently no error in the ruling.

But it is urged that the court committed an error in refusing,

after having completed his charge, to present additional requests to the jury.

It appeared that, prior to the commencement of the charge, written requests were handed up by the counsel for the defendant as to the subjects upon which the defendant requested the court to charge the jury. During the progress of the charge, these requests were ruled upon — either charged to the jury as requested, or qualified, or definitely refused. After all this had been done and the jury were about to retire, the counsel for the defendant said: " In connection with your remarks on the evidence, I request as to the testimony of McKenna — " The court interrupted the counsel, declining to present any more requests, to which ruling the counsel for defendant seemingly assented, taking no exception.

This condition of the record does not show any ground for reversal, nor that the defendant has been injured by the ruling of the court.

The next question presented is as to the use of the books of the defendant upon this trial, which it is claimed were taken from him by means of search warrant proceedings. We do not find, upon an examination of the record, that any but one of the books taken by the search warrant proceedings was produced from the custody of the People, and that seems to have been an inventory which was introduced in evidence. In the determination of this question it is not necessary to pass upon the interesting point raised by the learned counsel for the defendant, because no exception was taken to the admission of the evidence, and it is not necessary to decide how far the books, papers and implements of a person charged with crime can be used against him.

There is no constitutional question involved, as seems to be claimed, such as existed in the case of *Cancemi* v. *People* (18 N. Y. 128). In that case there was an error in the constitution of the tribunal before which the prisoner was convicted. Such an error is very different from one which is committed in the course of a trial, to which attention has not been called. The prisoner has no constitutional right to be convicted by evidence that shall be competent in every particular, although he has a constitutional right that the tribunal before which the evidence is introduced shall be constructed according to law.

In the case at bar, even if the contention of defendant's counsel is well founded (which we do not pretend to decide) evidence was simply admitted which might have been objected to by his counsel, and was not. This clearly cannot form any ground for the reversal of a judgment.

In the consideration of the exceptions to which attention has been called, it has not been necessary to state with particularity all the evidence which has been introduced upon the trial, and as was said in the commencement of this opinion, it is impossible so to do. But upon an examination of such evidence it does not appear that it is the duty of this court, for errors alleged which were not excepted to, and to which attention was not called, to reverse this conviction upon the ground that injustice has been done. There was evidence before the jury justifying the verdict rendered by them, and with their conclusion we see no reason to interfere.

It follows, therefore, that the judgment appealed from should be affirmed.

FOLLETT and O'BRIEN, JJ., concurred.

Judgment affirmed.